ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

SIMON HOUCK, Admr.

1. NEGLIGENCE—*presumptions and burden of proof to rebut.* Although the *prima facie* presumption from an explosion of the boiler of a locomotive is, that there was negligence, either in testing or putting the materials together, when constructed into a boiler, or that it has been negligently used by subjecting it to too high a degree of pressure of steam, yet, when suit is brought by the engine-driver who had charge of the engine, or his representatives, against the person owning the engine, there is no presumption in his favor that the explosion was caused by defects in the boiler rather than from its negligent use, and the burden is on the plaintiff to show that the engine-driver was not himself guilty of negligence which caused the explosion, or, if guilty, that his negligence was slight and that of the defendant gross.

2. SAME—*engine-driver carrying more steam than rules of company allow can not recover damages caused by explosion.* In a suit by the representative of an engine-driver against the owner of the engine, to recover for the killing of the driver by the explosion of an engine in his charge, the plaintiff can

not recover if it appears that the explosion was the result of the carelessness of the engine-driver in not keeping sufficient water in the boiler, and in carrying more steam than, by the rules prescribed by the owner, he was allowed to carry.

APPEAL from the Circuit Court of Marion county; the Hon. AMOS WATTS, Judge, presiding.

Mr. GEORGE W. WALL, for the appellant.

Mr. W. W. O'BRIEN, and Messrs. CASEY & DWIGHT, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The only question presented by this record is one of fact. The plaintiff's intestate was an engine-driver on one of defendant's engines, engaged in hauling a water train between Big Muddy and Centralia. On the 11th of December, 1871, as the train was going from Centralia to Big Muddy, the boiler of the engine on which the intestate was employed exploded, killing the intestate and one Keen, a brakeman. It is alleged that the explosion was in consequence of the defective condition of the engine, and that the defendant was guilty of negligence in permitting, knowingly, a defective engine to be so employed. The finding of the jury sustained this claim.

We are of opinion that the jury totally misapprehended the evidence, as applied to the only legitimate subject of inquiry before them, and their verdict must, consequently, be set aside.

Although, as was held in *Illinois Central Railroad Co. v. Phillips*, 49 Ill. 234, the *prima facie* presumption from an explosion is, that there was negligence either in testing or putting the material together when constructed into a boiler, or that it has been negligently used, by subjecting it to too high a degree of pressure by steam, yet, when the suit is brought by the engine-driver who had charge of the engine, or his representatives, against the person or corporation owning the engine, there is no presumption in his favor that the explosion was caused by

defects in the boiler rather than from its negligent use, and the burden is upon the plaintiff to show that the engine-driver was not himself guilty of negligence which caused the explosion, or, if guilty, that his negligence was slight and that of the defendant gross in that respect, when compared with each other. The burden is upon him to prove the negligence which he charges, and this is not sufficiently done by merely proving an explosion, which may as well have resulted from the negligence of the engine-driver as from that of the defendant.

The evidence before us fails to show that the explosion resulted from the defendant's negligence. The substance of that, on behalf of appellee, was this: Simon Houck, the father of the deceased, says, at one time he heard the deceased ask Vanantwerp (who was the proper person to whom application for having engines repaired should be made) when he was going to repair or overhaul that engine, as it leaked so that he could not run it. Vanantwerp replied, that he would get at it some time or other. When this was does not appear.

Monkhouse, in November, 1871, heard deceased and Oxley, who had charge of the machine shops, in conversation. Oxley said to deceased, "What do you know?" Deceased replied: "It's gol darned hard getting down and disconnecting, this cold weather." Oxley said: "That's nothing," and turned away. Deceased observed: "It will be something after she blows somebody's head off." The witness understood this conversation to refer to the engine, and that the term "disconnecting," referred to the fact that the engine had given out, and had to be "towed in." He says, also, that he put a cylinder head in the engine once, and that it is very common for engines to give out and have to be "towed in"—common on all roads. He examined a fragment of the boiler after the explosion, and gives it as his opinion that the boiler would have stood the ordinary pressure, and would have carried all the steam defendant's rules allow.

Poland says, he is train-master between Centralia and Wapella. He had this engine on his station, drawing freight and sometimes passenger trains. She did not do the work he wanted, and he told Oxley to take her off and give him another,

which he did.   This was in the summer of 1871.   The trouble
with the engine then was, she was leaking in steam chest and
fire box, and some of her stay-bolts were loose.   This tended
to put the fire out, and she did not make steam properly.   He
says, however, he considered her safe from explosion; that it
is quite common for engines to get leaky as this was—even new
engines just out of the shop sometimes do so.   He thinks the
leak in the steam chest or fire box would only let off steam and
give relief, and that an engine in this condition would be safer
from explosion than a tight one, as the leak would let off the
pressure.

Vanantwerp, machinist, and foreman in the round-house at
Centralia, says, deceased called for repairs on this engine sev-
eral times—the last was the day before the explosion.   One of
the pumps was repaired in the afternoon before the explosion.
Witness was on the engine and examined her, about an hour
before she exploded.   She was in perfect order at that time.
The witness considered her perfectly safe, and still thinks she
was.   Thinks a leak or a rotten place in the boiler would re-
lieve the pressure, and tend to prevent explosion.

Walraven is a boiler-maker, not in the employ of the defend-
ant.   He examined the remains of the engine, after the explo·
sion, to see if he could ascertain its cause.   The iron and copper
seemed to be in good condition.   Some of the stay-bolts looked
as though they might not have been good, but they were pulled
out of the copper, and he can't say how they were.   He is un-
able to give any opinion as to what caused the explosion.   He
saw no part that was burned or worn out.   From the appear-
ance of the wreck, broken axles, bent frames and torn fragments
of the boiler, he is of opinion that the force which produced the
wreck was a very great and unusual one.

Samuel Spencer, a machinist, engaged in repairing reapers
and mowers, examined the wreck after the explosion; couldn't
tell cause of explosion; supposes it must have been from defect
of iron or excessive pressure.   Under the fire box it looked as
though iron had been burned; part of the lower fire box had
been torn loose; couldn't tell when the burnt appearance of

the iron was produced; it may have been done at the time of the explosion. The fragments indicated a terrible explosion.

Edward Clark, a conductor on defendant's railroad, says, he knew the engine to give out once, and towed her in from Vandalia to Centralia. It is not uncommon for engines to give out on the road.

John A. Campbell was conductor of the train when the engine exploded. Were running the train at 20 miles per hour, which was not unusual. He supposes low water was the cause of the explosion.

Hall, a blacksmith at Centralia, says, he saw fragments of the wreck after the explosion; noticed one piece, five or six inches long, that was very thin—not more than one-eighth of an inch thick, while the other pieces were three-eighths; it was torn through; did not come to any conclusion as to the cause of the explosion; thinks, perhaps, the thin piece was worn out. So far as he could see, the thick pieces were as badly torn and twisted as the thin one.

Cover is a boiler-maker. He says he put some stay-bolts in the fire box of the engine four or five days before the explosion, and he thinks her condition, when he got through, was good, so far as that part was concerned. Don't know the cause of the explosion.

Van Patten, locomotive engineer, in defendant's employ, says, he run the engine from November, 1866, to April, 1867, between Cairo and Centralia, on freight; she was then laid up at Cairo; don't know her condition at time of explosion, and has no opinion as to cause of explosion.

Simon Houck, being recalled, produced a piece of iron, which he testified was a part of the boiler of the engine, and which he was of opinion was unsound. Cover, being recalled, examined the piece of iron produced by Houck; said he could not tell whether it was sound or not; a part of it looked as if it might have been over-heated, but that might have been produced by heat at the time of the explosion.

Keeth, a blacksmith, having inspected the piece of iron produced by Houck, gives it as his opinion that it was not first-

19—72D ILL.

class boiler iron; don't know what it might have been, or when it was subjected to the heat of which it shows evidence.

Walraven, being recalled, also examined this piece of iron. Said it had been very much burnt, and had, to a considerable extent, lost its power, but it was difficult to say what might have been its condition at the time of the explosion. The burnt appearance might have been caused in the making, or by the explosion. There is a flange turned over a part of the piece, and he don't think that could have been done after it was over-heated. From its appearance, he is of opinion that there was no water on the piece at the time of the explosion, and that the burnt appearance was produced by the heat then generated.

Mertz, a blacksmith, also examined this piece of iron, and testified that, in his opinion, the iron was burnt and unsound when it was made, and thinks the flange was turned after the iron was burnt.

These are all the witnesses introduced on behalf of the plain-tiff, whose evidence has any bearing on the question of what may have caused the explosion; and it will be observed that, although there is considerable proof that the engine had been out of repair at different times, still, this is shown not to be unusual, even with new engines, and the only witnesses who profess to know anything about the condition of the engine immediately or shortly before the explosion, are Poland, Van-antwerp and Cover, and they say it was good, and in this they are also fully corroborated by Lape, a witness for defendant. Even the defects shown to have previously existed, instead of being such as would, in the estimation of the witnesses, cause or contribute to the explosion, are said to have been such as would have tended to prevent it, by permitting the escape of steam and thus relieving the pressure.

On the other hand, it was proved, on behalf of the defendant, that it had a rule, printed on a card and posted up in such con-spicuous places, including one on the engine itself, as the engine-driver could not have failed to have seen it and been familiar with its requirements, which prohibited him from carrying more than 110 pounds of steam, yet it is shown by one witness,

Lape, who examined the engine something near an hour before the explosion, and a short time before the train started from Centralia, that she was carrying 125 pounds of steam, and another witness, Campbell, the conductor of the train, noticed the engine just before starting, and she then had from 130 to 135 pounds of steam.   A number of witnesses of large experience, some in manufacturing and others in handling engines, examined fragments from the wreck, after the explosion, and without adverting to their evidence in detail, it is sufficient to say, they all concur in saying that the line of the water mark, at the time of the explosion, is plainly to be seen on the fragments, and shows that the water in the boiler was then standing several inches below the top of the crown sheet, whereas it ought to have stood several inches above it; and they give it as their opinion that the explosion was caused by a deficiency of water in the boiler, and that it could not have resulted from the defects claimed to exist in the engine.   The train was supplied with water, and the engine-driver had gauges to show him the height of water in the boiler, and it was his duty to use them, and keep the boiler properly filled.

. The evidence, in our opinion, clearly shows that the explosion was the result of the carelessness of the engine-driver in not keeping sufficient water in the boiler, and in neglecting to observe the rules limiting the quantity of steam which he was allowed to carry.

In this view of the case, the plaintiff has no cause of action against the defendant, and it will be unnecessary to remand the case to another jury.

, The judgment is reversed, and judgment will be given in this court for the costs of appellant, as well in the court below as in this court.

*Judgment reversed.*