## Illinois Central R. R. Co. v. Jennie Prickett, Adm'x.

1. NEGLIGENCE—*Proof of Explosion of Locomotive Boiler as Prima Facie Evidence of.*—An explosion of a locomotive boiler, whereby passengers, or others to whom the company owes the duty of care, such others not being charged with the management of the engine, is *prima facie* evidence of negligence on the part of the railroad company. But in order to be *prima facie* evidence of the company's negligence as to the driver of the engine, it must be proved that the explosion was not due to want of care, skill, fault or negligence on the driver's part.

2. EVIDENCE—*Admissible in Suit for Injuries Caused by Explosion of Locomotive Boiler.*—Where the allegations of a declaration are that defendant negligently provided an engine for the deceased which was in an unsafe condition and repair, and a boiler composed of materials that were deficient, and not capable of sustaining the strain incident to the operation of said engine by steam power, and by means thereof liable to explode, plaintiff may show the materials of the boiler, its state of repair, and that its imperfect or defective condition was the cause of the explosion; whether this defective condition was the cause of the explosion; whether it was in consequence of a collision, a part of the boiler being worn thin by long use; by broken or weakened stay bolts; or by all or any of these causes combined. The defendant may introduce evidence to prove that the engine and boiler were new, and of approved manufacture, as tending to show both their reasonably safe condition at the time of the explosion, and also that defendant had used reasonable care in providing safe machinery for the use of its servants.

3. SAME—*As to Condition of Engine Causing Injury.*—In a personal injury case, evidence that the engine, the explosion of which caused the injury, had been in a head-end collision, and was very old, worn and leaky, is admissible.

4. SAME—*Expert Knowledge Not Necessary to Testify to Matters of Common Observation.*—The appearance of a broken bolt, as shown by a recent or remote break, is a matter of common observation, and does not come within the class that limits an expression of opinion to experts.

5. SAME—*Of General Reputation for Care Where There Are No Eyewitnesses.*—Evidence of deceased's reputation as a sober, careful and competent engineer is admissible where there was no one in the cab with him at the time of the explosion, except his fireman, who was also killed, as direct proof of ordinary care could not then be made.

6. SAME—*Of Custom of Other Railroads in Inspecting Engines Inadmissible.*—Evidence as to the custom of other railroads in inspecting engines is inadmissible. The question in each case is, what is reasonable care and inspection in this case.

7. DAMAGES — *Fact that Deceased Was Insured, and that Widow Received Insurance, Not a Factor in Computing.* —The fact that the life

of the deceased was insured, and that his widow received the insurance, is not a factor to be considered in establishing the amount of damages to be allowed.

8. ACTIONS—*Action Given by Statute to Widow and Children Can Not be Contracted Away by Husband.*—The statute provides for the recovery of whatever pecuniary loss the widow and children sustain through the death of the husband and father. It is for their benefit, and the husband can not contract away this right to recover.

9. PRACTICE—*Where an Instruction to Find for the Defendant is Properly Refused.*—Where there is evidence tending to prove the plaintiff's case, an instruction to find for the defendant is properly refused.

Trespass on the Case.—Death from negligent act. Appeal from the Circuit Court of Marion County; the Hon. WILLIAM M. FARMER, Judge presiding. Heard in this court at the February term, 1903. Affirmed. Opinion filed June 15, 1903.

This was an action brought by Jennie Prickett, as administratrix of the estate of Thomas J. Prickett, against the Illinois Central Railroad Company, for damages on account of his death from injuries received from an explosion of a locomotive he was operating as engineer while in the employ of appellant.

The cause was tried, resulting in a verdict in favor of the plaintiff for $4,000, to reverse which the defendant prosecutes this appeal.

The declaration contains two counts: The first, after setting forth the relation existing between the defendant and deceased, the exercise of due care on the part of deceased, etc., avers that it was the duty of the defendant " to furnish to said Thomas J. Prickett a locomotive engine that was in reasonably safe condition and repair, and the materials of which were of sufficient and proper strength to resist the great strain and force incident to the operation of said engine by means of steam power," etc. It avers the breach of said duty as follows:

" Yet the defendant carelessly and negligently furnished the said Prickett with a certain engine other and different from the engine he was in the habit of operating on said railroad, which said engine was, through negligence of the defendant, in an unsafe condition and repair, and the boiler of which was composed of materials that were deficient in strength and not capable of withstanding the strain inci-

dent to the operation of said engine by steam power, and by means thereof liable to explode when operated at the high steam pressure necessary in hauling and handling large and ponderous trains of cars, all of which was unknown to said Prickett, but was well known to the defendant; whereby, while the said Prickett was necessarily riding in the cab of said locomotive engine, driving and handling the same in a skillful and proper manner, the said engine, by reason of its unsafe condition and repair, the want of sufficient strength in its materials, and by means thereof, its liability to explode when being operated at the high steam pressure necessary while hauling ponderous trains of cars, exploded, and the said Prickett was then and there by means thereof greatly bruised, etc., from the effects of which he died."

The second count contains substantially the same allegations set forth in different language and form.

The plea of general issue was filed.

Thomas J. Prickett, the deceased, was a prudent and competent engineer of thirteen years' experience, and a man of sober habits. He had been in the employ of appellant for a number of years in the freight service, and was engaged in operating a freight engine of the Mogul type until within a day or two of the explosion. He was unfamiliar with the particular engine in question, No. 915. This was a passenger engine. While the principle of its operation was the same, it was somewhat different in construction from the Mogul engine Prickett had been running.

This engine had been in service nine or ten years and had run 515,649 miles. In 1896 it was in a head-end collision, which materially damaged its machinery and to some extent, its boiler. After this the machinery was repaired and the engine was again put in service.

The evidence tends to show that for six months prior to the explosion there had been numerous leaks in the boiler and fire box, which were reported by the engineers then in charge. Witnesses for appellant testified that leaks were not unusual, even in the boiler of a new engine; but as a rule they were for different causes.

The stay bolts in a new boiler are not impaired by the

action of rust and corrosion, neither are they cracked by vibration like those in a boiler long in use. Appellant was notified of these numerous leaks and broken stay bolts and claims to have repaired them.

In November, 1899, the old flues were all taken out and 186 new ones supplied in their place.

On May 12th, five days before the explosion, the foreman of the boiler department inspected this engine and discovered that the left side sheet of the fire box had nearly worn out at a point where it was attached to the mud ring, and he cut out the thin piece and put in a patch seven by nine inches.

The test by which broken or cracked stay bolts are located is called the hammer test, and is made by filling the boiler with water under pressure, and tapping the end of the bolt with a hammer; the sound determines whether the bolt is cracked or broken in two.

The foreman, who made this test, discovered on that day forty-seven stay bolts that were cracked and broken, and had them renewed.

The safety valve on this engine was set for 160 pounds, and was tested by the foreman when these repairs were made, and the valve found to work all right.

On the morning of May 17th, Thomas J. Prickett's train consisted of engine 915, a ladies' coach, smoking car, baggage car, and express and mail car. The train left Centralia at 6:18 A. M., and the run was from Centralia to Cairo. Before Prickett took charge of his engine the fire had been started and it was steamed up. When the engine hostler came to take it out it was popping off steam, showing that when the pressure was more than 160 pounds the safety valve would permit it to escape and relieve the strain on the boiler. The hostler took the engine to the tank and filled the boiler full of water, and the engine tank also.

As the train approached DuBois station, a little after seven o'clock, the engineer blew the usual long blast for the station, and shut off steam, preparatory to making the stop; then a short blast was given, being one of the three signals usually given just before stopping.

There were several eye-witnesses to the explosion standing near the track ahead of the engine.

After the steam was shut off the engine was working no steam. The safety valve was not popping off, as no steam was escaping therefrom. While in this condition, when within about a quarter of a mile of the depot, the boiler exploded. The main portion of the boiler was blown out ahead of the train about 100 feet and landed on the track. Prickett was blown out on the right side of the engine about 150 feet. He lived about an hour, but never regained consciousness; the fireman was blown in the opposite direction, and lived about forty minutes.

Nearly one-fourth of the crown sheet was torn out of the boiler, and a large piece of the side sheet out of the fire-box. These were found near the track after the wreck and examined by a number of witnesses, both for the plaintiff and defendant.

The crown sheet was not burned or warped. It is claimed that this indicates there was ample water in the boiler, and that it was not a dry boiler explosion. The evidence does not show that the deceased was in any manner at fault in connection with the explosion.

Many of the bolts in that portion of the crown sheet which was blown out were pulled or torn through the metal, and were hanging in the rigid crown bars, but some were broken off at various lengths.

The side sheet which blew out was on the opposite side of the fire box from the sheet which was found worn and repaired with a patch on May 12th. At a point near the bottom where the side sheet fastens to the mud ring, it was found to be worn thin. This place corresponded to the place on the opposite side sheet which was patched a few days before.

The metal gave way at this thin spot and was torn through in a ragged zigzag line.

A number of the stay bolts fastening the side sheets were broken entirely off and many of them were cracked.

There is a conflict between the witnesses for appellee

and appellant'as to whether the breaks in the bolts were old or new breaks.

Appellee's witnesses examined the wreckage within an hour or two of the explosion and pronounced the broken stay bolts old breaks; two of these witnesses were blacksmiths, one a stationary engineer and others farmers and laborers. Appellant's master mechanic examined the wreck about the same time, and one of its foremen and its assistant superintendent of machinery examined the wreckage next day; they testified that the cracks in the stay bolts were old, but the breaks were newly made. Expert witnesses offered by appellant testified that they were unable to discover any defects or weakness in the boiler, and advanced no theory as to the cause of the explosion.

Much testimony was introduced explanatory of the construction, and the office of different parts of the boiler, a recitation of which would unduly extend this statement and would throw little light upon the issue involved to those not practically or theoretically familiar with boiler construction in engines of this class.

W. W. BARR, attorney for appellant; J. M. DICKINSON, of counsel.

JOHN J. BUNDY, attorney for appellee; F. F. NOLEMAN and W. F. BUNDY, of counsel.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

The evidence tends to show, without conflict, that the deceased was a sober, careful and competent engineer. There is nothing to indicate that prior to and at the time of the explosion, he was negligent or improperly discharging his duties. There is no question of contributory negligence. Two issues of fact remain to be determined. These are. was the engine furnished by appellant "reasonably safe"? If it was not, had appellant exercised reasonable care to furnish a reasonably safe engine?

At 6:18 A. M., May 17th, the engine was turned over to

the deceased by the hostler in charge at Centralia. Its boiler and tank were full of water. The safety valve was set to allow steam to pop off at 160 pounds pressure, and was in good working order. The train consisted of one express and baggage car, a smoking car and a ladies' car. When nearing DuBois a little after seven o'clock, a long blast of the whistle was given for the station, followed by a short blast, steam was shut off, and while slowing down for the station, the boiler exploded with great violence, injuring the deceased and his fireman so that they both soon died.

Nothing appearing to the contrary, the inference is that the boiler exploded because some part of it was insufficient to stand the strain of ordinary pressure, either through long use, improper material in its construction or repair, or from being casually out of repair in a part or parts which was not discovered, or at least not repaired, when inspected May 12th, five days before the explosion.

Appellant contends that no presumption of negligence arises from the fact of the explosion of the boiler.

The cases cited by appellant must be considered in connection with the facts disclosed in them. One of these cases is I. C. R. R. Co. v. Houck, 72 Ill. 285. This case cites 1. C. R. R. Co. v. Phillips, 49 Ill. 234, in which this precise question arising upon a refused instruction is discussed at length. It is there said:

" The manufacturer has tests which are recognized by the scientific world as well as the practical manufacturers, by which to detect latent defects, if they exist, thus securing safety and durability. Every day's experience teaches that where the proper quality of iron has been selected under the usual tests, with reasonable care, by skillful and experienced persons, they are safe in their use for practical purpose. Knowing this, when an explosion has occurred, it is natural to conclude that there has been negligence in selecting, testing or putting the materials together when constructed into a boiler, or that it has been negligently used by subjecting it to too high a degree of pressure by steam. It would therefore be improper to say that an explosion is not *prima facie* evidence of negligence."

The case of I. C. R. R. Co. v. Phillips was again before the Supreme Court and is reported in the 55th Ill. 194, and the presumption of negligence was again discussed. It is there said :

" There is no great hardship imposed upon appellants, in presuming negligence upon proof of the explosion. It may be easily rebutted if untrue. Such a presumption, however, is prompted by motives of public policy, and is necessary for the promotion of public safety. We know explosions happen—that they are the exception, not the rule. We know that boilers manufactured of good material, and carefully managed by skillful and prudent men, carefully tested, thoroughly repaired when defective, and closely observed to discover indications of weakness, rarely explode. There are mysterious explosions assignable to no known cause. This is only the exclusion of what is comprehended in the general rule and should not forbid the inference deducible therefrom. No sane man can doubt, that explosions generally result from defective iron, corrosion or deterioration of the boiler or its mismanagement. Such facts proved would constitute negligence."

In commenting upon the Phillips case, reported in the 49th Ill., *supra*, it is said by the court in I. C. R. R. Co. v. Houck, *supra:*

"When the suit is brought by the engine driver, who had charge of the engine, or his representatives, against the corporation owning the engine, there is no presumption in his favor that the explosion was caused by defects in the boiler rather than from its negligent use, and the burden is upon the plaintiff to show that the engine driver was not himself guilty of negligence which caused the explosion. The burden is upon him to prove the negligence which he charges, and this is not sufficiently done by merely proving an explosion which may as well have resulted from the negligence of the engine driver as from that of the defendant."

In T., W. & W. Ry. Co. v. Moore, 77 Ill. 217, it is said :

" It will be observed that in the Phillips case, the person injured was a bystander who was not in the employ of the company and in no manner connected with it. Under such circumstances, it was very proper to hold that the explosion made out a *prima facie* case of negligence, for the reason that the company would be held liable if the explo-

sion occurred on account of defects of the engine or through the negligence of the engine driver."

This case is cited in The John Morris Co. v. Burgess, 44 Ill. App. 39, which holds that when a bystander is injured, the explosion of a boiler is *prima facie* evidence of negligence.

From these cases it is seen that the reason for the rule holding that an explosion is not *prima facie* evidence of negligence when the representatives of the engineer sue, is, that his negligence may have been the cause of the explosion, and not a defective boiler. But if the evidence shows that the engine driver was not at fault, then there is no reason for the rule, and the reason failing, the rule does not apply. In other words, the decisions warrant the inference that if a boiler explodes, it is because it was improperly used, or because it was defective. If the evidence shows that it was not improperly used, then the conclusion follows that it exploded because it was defective.

We think that the rule may be thus stated: An explosion of a locomotive boiler, whereby passengers or others to whom the company owes the duty of care, such others not being charged with the management of the engine, is *prima facie* evidence of negligence on the part of the railroad company. But as to the driver of the engine, it is not such evidence. But if it is proved that the explosion was not due to want of care, skill, fault or negligence on his part, the explosion is *prima facie* evidence that the boiler was defective and unsafe. This is not holding that it is also *prima facie* evidence that the party furnishing the boiler was negligent, for the reason, that to make the master liable for injury to the servant from defective machinery, it must also appear that the master had knowledge, or should have known, that it was defective and unsafe.

Such notice or knowledge is not presumed from the mere fact that the machinery is out of repair or is in an unsafe condition.

In the case at bar, there is evidence proper for the consideration of the jury, bearing both upon the condition of

the boiler and the care that was used in ascertaining its condition.

The exact cause of a boiler explosion is in many instances not easy to determine. Nor is it necessary, under the pleadings as they are in this case, that an exact single cause, if it was a single cause, should be definitely proved.

The declaration does not specify the particular part of the boiler that was defective, unsafe, or out of repair. Its allegations are general. It alleges that appellant negligently provided an engine for the deceased which was in an unsafe condition and repair, and a boiler composed of materials that were deficient and not capable of sustaining the strain incident to the operation of said engine by steam power, and by means thereof liable to explode, etc. —and the said engine by reason of its unsafe condition and repair, the want of sufficient strength in the materials of which it was composed, and by means thereof—exploded with great force and violence. To this the general issue was pleaded.

It was competent, under the pleadings, for the appellee to show the materials of the boiler, its state of repair, and that its imperfect or defective condition was the cause of the explosion; whether this defective condition was in consequence of a collision; a part of the boiler being worn thin by long use; by broken or weakened stay bolts; or by all or any of these causes combined. No one would question the competency of evidence to prove that the engine and boiler were new, and of approved manufacture, as tending to show both their reasonably safe condition at the time of the explosion, and also that appellant had used reasonable care in providing safe machinery for the use of its servants. For a similar reason it was competent to prove that in 1896 the engine had been in a head-end collision; that in it "the machinery was all torn to pieces and the boiler hurt in places;" that the engine was ten years old and had run 500,000 miles; that some of the stay bolts, examined after the explosion, indicated old breaks; that all the flues were taken out in 1899, and 186 new ones

replaced that number of old ones; that forty-seven cracked or broken stay bolts were taken out five days before the accident; that the engine had been frequently repaired; that the boiler often leaked; that five days before the explosion, a patch seven by nine inches had been placed on the left side of the fire box, and that at a point where great strain came, a thin piece of the boiler was found to have been blown out. All of this was competent evidence, having greater or less probative force, when taken in connection with the evidence of repairs and inspection, for the jury to weigh both as bearing upon the condition of the boiler and notice to appellant of its condition.

Considering this evidence together with the undisputed facts—that the engine driver was competent and careful, the safety valve in good order and indicating no undue steam pressure, the train a light one, the boiler and tank filled with water at Centralia, twenty-five miles from Du Bois station, and that the explosion came an hour after the train started and between whistles for the station, with steam shut off and while slowing down for the station, warrants the inference, if the engineer was not at fault, that the boiler was defective. We can not say that the jury was unwarranted in finding that the boiler was defective and unsafe, and that reasonable care on the part of appellant would have discovered its defective condition.

Other points made by the appellant will be briefly noticed.

It is urged that a blacksmith and a farmer who testified that they examined some of the broken stay bolts after the explosion, and testified that the breaks indicated old breaks, were not competent witnesses, not being experts.

The appearance of a broken bolt as shown by a recent or a remote break, is a matter of common observation and does not come within the class that limits an expression of opinion to experts. C. & A. R. R. Co. v. Truitt, 68 Ill. App. 76.

There was no error in admitting evidence of deceased's reputation as a sober, careful, and competent engineer.

There was no one in the cab with him at the time of the explosion except his fireman, who was also killed. Direct proof of ordinary care could not then be made.

In such case, evidence of general reputation for care, etc., is competent. Many cases so holding might be cited. C. B. & Q. R. R. Co. v. Gunderson, 174 Ill. 495; Dallemand v. Saalfeldt, 175 Ill. 310.

It was not error to exclude evidence as to the custom of other railroad companies in inspecting engines. What inspection would be reasonably sufficient depends upon a variety of circumstances. An old engine, or one frequently out of repair, or that has seen long and severe service, would naturally require more careful inspection than one but lately put in use, and in general good order. The question in each case is, what is reasonable care and inspection in this case.

It is not in the nature of things that conditions can be always similar, and there can be no custom, in its legal sense, unless conditions are similar.

The fact that the life of the deceased was insured and that his widow received the insurance, is not a factor to be considered in establishing the amount of damages to be allowed. It is a novel proposition, unsupported by law or justice, that a widow's pecuniary loss on account of the death of her husband through the negligence of his employer, is to be gauged by the amount of insurance which he has been considerate enough to provide. The statute provides for the recovery of whatever pecuniary loss the widow and children sustain. It is for their benefit and the husband can not contract away this right to recover. Maney v. C., B. & Q. R. R. Co., 49 Ill. App. 115.

Appellant's criticism of appellee's first instruction is apparently based on the instruction as abstracted. The criticism is that the instruction is " defective in declaring appellee's right of recovery in consequence of the explosion of the boiler, irrespective as to whether or not such defective condition was charged to the negligence of appellant, as charged in the declaration."

The abstract omits that portion of the instruction which required the jury to find from the evidence that "the defendant carelessly and negligently furnished the deceased with an engine, the boiler of which was out of repair and in a defective condition, as is averred in plaintiff's declaration."

The instruction when read in the record is not open to the criticism as read in the abstract. Appellee's second instruction is as to the measure of damages. The first sentence is, "If, under the evidence in this case and the instructions of the court you find the defendant guilty," etc. The criticism is, "it improperly authorizes a finding upon and from instructions and does not correctly announce the rule as to measure of damages, being too broad, in that it may have been understood as authorizing allowance for consolation."

The instruction was not liable to be understood in the manner suggested by the criticism. Nor do we think that the instruction is open to the latter part of appellant's objection. If it were, it is not a material error.

It is not assigned for error that the damages are excessive, nor are the damages excessive under the evidence that the deceased was a sober, competent engineer, thirty-seven years of age and earning from $125 to $140 a month.

We have examined the modifications to appellant's third, fifth, seventh, eighth and tenth instructions. They are not material modifications and introduce no element of error in the instructions as modified.

The substance of the twelfth refused instruction, so far as it states the law correctly, was fully given in other instructions. If it is to be construed as requiring proof of what particular part or piece of the boiler was so defective that it caused the explosion, it does not state the law correctly under the pleadings in this case. If the jury was warranted in believing from the evidence that the boiler was in such general poor and out of repair condition, and any portion of it too thin, or that the stay bolts were cracked and broken, and that this, or these conditions,

caused the explosion, then the allegations of the declaration, as to a defective boiler, were sufficiently proved.

It is urged, as is now generally done in all contested cases, that the court should have instructed the jury to find for the defendant. If the court had so instructed it would have been reversible error. There was evidence tending to show that the boiler was defective and out of repair, and from its history, its long service, frequent repairs, and the condition of some of its parts after the explosion, as testified to by witnesses, the jury had grounds for belief that such an inspection as such an old boiler should reasonably have had, would have disclosed its dangerous condition.

Finding no material error in the record, the judgment of the Circuit Court is affirmed.