## John Howard, Appellee, v. Chicago & Alton Railroad Company, Appellant.

### Gen. No. 5,713.

1. MASTER AND SERVANT—*"res ipsa loquitur."* Where plaintiff, a railroad gate keeper, was injured by an iron blow pipe flying out from a rapidly passing engine, the doctrine of *res ipsa loquitur* applies, since somewhere on some engine of defendant, a blow pipe must have been insufficiently attached, and the inspection was not sufficiently careful to ascertain that fact.

2. MASTER AND SERVANT—*"res ipsa loquitur."* The rule that the doctrine of *res ipsa loquitur* does not apply in cases between master and servant, is not a hard and fast one, arbitrary in its application, but is applicable where the servant is the same as a stranger as to the operation of the particular thing or instrumentality causing the injury.

3. JURY—*circuit court may call.* Where a county board fails to perform its duty in making up jury lists, the circuit court has inherent right to cause a jury to be summoned, and a motion to quash such a special venire is properly overruled.

Appeal from the Circuit Court of Will county; the Hon. CHARLES B. CAMPBELL, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed March 12, 1913.

J. L. O'DONNELL, T. F. DONOVAN and J. A. BRAY, for appellant; WINSTON, PAYNE, STRAWN & SHAW, of counsel.

J. W. D'ARCY, for appellee.

MR. JUSTICE WHITNEY delivered the opinion of the court.

Appellee was a gate tender for appellant on the ninth day of February, 1910, at the time he received the injuries for which this suit was brought, and had been since July, 1907. At the time he received these injuries he was tending the gate across Main street in Braidwood. On the day in question about half past three in the afternoon a fast train of appellant was

approaching Braidwood from the south running at the rate of between 50 and 60 miles an hour, and was not due to stop at Braidwood. As the train was approaching Main street crossing appellee lowered the gates and stepped back into the middle of the street, and about 30 feet back from the railroad tracks, because as he testified he was hired by Mr. Lukowski, the section foreman, and received his instructions from him about his duties when lowering and raising the gates when trains were approaching, and keeping children off the track that might be attempting to cross as trains were approaching, and other obstructions.

Appellee stepped back into the street as he testified so as to be ready to stop school children from crossing. While in this position he was seriously injured in a most peculiar manner. When the train reached the crossing an iron pipe some ten feet or more in length and an inch or more in diameter, weighing about forty pounds, flew out from the track knocked him down, broke his leg, rendered him unconscious and otherwise severely injured him. For these injuries appellee brought suit and recovered a verdict and judgment for $2,750 from which this appeal is prosecuted.

Numerous errors are assigned among which are rulings on evidence and instructions. So far as the rulings on evidence are concerned we can say in passing, some of the rulings on evidence about which complaint is made are not based on any objection made at the trial, and we see no reversible error in the remainder thereof. There is nothing reversible in the errors alleged in the giving of two of appellee's instructions complained of. While the seventh instruction is not proper in form because it contains the statement, "and from all of the other facts and circumstances appearing on the trial," yet we fail to see how it worked any injury to appellant. Complaint is also made that the trial court did not sustain a motion made on the 14th day of March, 1912, to quash the venire for the jurors summoned by the sheriff from the body of the county

by order of the court. It appears from the record that a challenge to a former array of jurors was sustained on March 13, 1912, because of the irregularity in drawing and summoning the jurors, due to the fact that the county board had failed to make up jury lists as required by the statute. We are of the opinion that the failure of the county board to perform its duty, cannot·deprive the Circuit Court of the power to try jury cases. ˙This failure of the county board to make up jury lists, would in such case absolutely prevent any jury trials in the Circuit Court, if that court did not have the inherent right to cause a jury to be summoned, if no statutory way were provided. Healy v. People, 177 Ill. 306; Rockford Ins. Co. v. Nelson, 75 Ill. 548. The case of People v. Rodenberg, 254 Ill. 386, cited by appellant does not seem to be in point or decisive of the question. We see no error in overruling the motion to quash the special venire.

We come now to the real merits of this appeal. Does or does not the doctrine of *res ipsa loquitur* apply to this case. The substance of the facts briefly stated is that this piece of iron pipe was found to be the blow pipe of an engine. The engineer of the train testified:

That the train passed Braidwood along about 3:20 or 3:25 P. M.; that it was late there about ten minutes; that it went over Main street crossing probably 45 to 50 miles an hour; that he was going right along; that they pick up speed there if they can; that as the train went over the Braidwood crossing he saw two or three ˙men standing east of the crossing; that he saw an object, he could not state whether it was a pipe or not, going in the direction the train was going; that it went very fast, about two or three feet from the ground toward the men he saw standing there; that when he first saw the object the train was five or ten feet south of the crossing shanty; that he saw the object strike the man, and saw the man fall.

The piece of pipe that was found was worn smooth on one end and marks were found on the ties south of this crossing for about one mile and a half. About one

mile and a half south of Main street a piece of metal was found between the tracks soon afterwards, which was a piece into which a blow pipe is screwed. The pipe found at the place where the accident occurred was ascertained to be a blow pipe, after it had been sent to Bloomington the next day.

Appellant introduced evidence to the effect that the engine drawing this train was a 600 style engine and that all blow pipes on all engines of that class had been removed a few days before the accident, because of their liability to freeze. Appellant also introduced evidence that this blow pipe belonged to an engine of the 400 class, and that no 400 class engine had been over the road that day.

The marks on the ties were not there when the section men went over the tracks south of Main street in the forenoon and afternoon. The accident happened about half past three in the afternoon. The marks were found there afterward. Appellee could not say where the pipe came from. It may have been on the engine notwithstanding the testimony that all of the blow pipes had been taken off the 600 class engines before. Appellant may have failed to remove this one, and it may have been on, and might become loosened and begin to drag about one mile and a half south of Braidwood and finally become detached and thrown from the train. It may have been detached from some other engine that day notwithstanding appellant's testimony that no such engine had passed over the road that day. The great speed at which the train was going just before and at the time of the accident may have caused the train to pick up, carry along and hurl off at the crossing this piece of pipe, (although it seems incredible that such a thing could happen, with a pipe weighing forty pounds) however, something was thrown off by this train. The engineer saw it going through the air and saw it hit and knock down the man, and it was afterward found to be the blow pipe from an engine. It seems highly improbable that appellant had not found a blow pipe missing

on some engine, but appellee had no way of ascertaining what some officer or employe of appellant, in some branch of the service might have known about it.

It is our conclusion that the doctrine of *res ipsa loquitur* applies. There is no proof that an accident had happened which could detach such a pipe; but from the fact that the train hurled off what was afterward found to be a blow pipe, and that appellee was hit by a blow pipe, as appears to us to have been conclusively proven, it also seems to us that it is just as conclusively proven that somewhere on some train or engine of appellant a blow pipe was insufficiently attached, and that the inspection was not sufficiently careful to ascertain that fact.

Three important facts are fully established, namely, that appellee was seriously injured while attending to his duties as gate keeper; that he was injured by a blow pipe thrown from this engine or train of appellant, and that appellee had nothing whatever to do with the operation of either the engine or train.

Whether appellee was in the exercise of due care for his own safety was a question of fact to be decided by the jury, and they decided that he was in the exercise of such care. Argument is made that on the approach of the train, appellee's place was in the crossing shanty, and that had he remained there no accident would have occurred. It will be borne in mind that appellee testified he had been instructed by the man who employed him to keep children off the crossing upon the approach of trains, while Lukowski, who testified that he hired appellee, further testified that he did not think he ever told appellee to look out and not let children under the gates, etc., but he further testified he had seen appellee out there warning children back a number of times. The jury have passed on the question of the exercise of due care by appellee, and we are not disposed to disturb their finding. We do not think appellee assumed the risk of the happening of such a strange accident as this is proven to have been.

We are aware of the conflict of authorities regard-

ing the application of the doctrine of *res ipsa loquitur* in a case where a servant sues a master. There exists a general rule, so to speak, that in cases between the master and servant the doctrine has no application. We do not believe however, this rule is a hard and fast one, arbitrary in its application, like say the rule in "Shelly's case."

The reason for the rule is undoubtedly that where the servant is operating the instrumentality that causes the injury it cannot be determined how much his own negligence may have had to do with the happening of the accident, to, with, or by that instrumentality, but applying the well known legal maxim that when the reason for the rule ceases, the rule itself ceases, we think the principle of *res ipsa loquitur* ought to apply in a case where the servant is the same as a stranger as to the operation of the particular thing causing the injury. There is no question but what appellant owed appellee the duty to afford him a reasonably safe place to work. That appellee was in the line of his duty when injured is clear from the evidence, and that he was in the exercise of due care for his own safety has been found by the jury from the evidence, and the evidence shows appellee was injured by circumstances with which he had nothing to do, and that those circumstances were under the control of appellant.

We are of the opinion that the circumstances surrounding the case as shown by the proof, amounted to evidence from which the jury were warranted in finding in the first instance the fact of the negligence alleged and that if the jury did not believe from the evidence that appellant had rebutted the inference raised by the *prima facie* case thus made, then they were warranted in finding appellant guilty. Heimberger v. Elliott Frog & Switch Co., 165 Ill. App. 316; Elvis v. Lumaghi Coal Co., 140 Ill. App. 112; Goddard v. Enzler, 123 Ill. App. 108; Illinois Cent. R. Co. v. Prickett, 109 Ill. App. 468.

Judgment affirmed.

*Affirmed.*