DORA NOCE, Executrix of the Last Will and Testament of HENRY H. NOCE, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, a Corporation, Appellant.—85 S. W. (2d) 637.

Division One, July 30, 1935.

*J. W. Jamison, A. P. Stewart* and *C. H. Skinker, Jr.,* for appellant.

*Charles L. Moore* and *Allen, Moser & Marsalek* for respondent.

FERGUSON, C.—This is an action under the Federal Employers' Liability Act to recover damages for the death of Henry H. Noce who was killed while in the course of his employment by defendant as a section laborer upon defendant's railroad tracks. The case was tried in the Circuit Court of the City of St. Louis and resulted in a verdict in favor of plaintiff executrix in the amount of $45,000. As a condition to the overruling of defendant's motion for a new trial the trial court required that plaintiff remit $20,000 which was done and thereupon judgment for plaintiff in the amount of $25,000 was entered from which defendant has appealed.

One, and the first, assignment of error is that the trial court should have granted defendant's request for a directed verdict, in the nature of a demurrer to the evidence, made at the close of the evidence which requires that we make a statement of the facts and circumstances in evidence before entering upon a discussion of the specific grounds upon which the demurrer to the evidence rests.

The deceased Noce was a member of one of defendant's section crews on one section of its main line railroad track from St. Louis, Missouri, to Memphis, Tennessee. About ten o'clock the morning of June 25, 1929, this crew was working on the track in the vicinity of Rush Tower (in Jefferson County, Missouri) replacing old with new ties. One of defendant's south (Memphis) bound passenger trains passed the point where Noce and the other members of the section

694

crew were working. Noting the approach of the train the foreman told the men to "step back." Noce stepped to the west side of the track a distance variously estimated at from ten to fifteen feet west of the west rail. He was farther from the track than others on that side and the foreman testified that he was at about "the usual distance for section men to get back" and "plenty far for safety." The train was moving at fifty miles an hour. As the engine passed Noce a piece of metal "hub liner" "flew out" from the engine, hurtled with great velocity through the intervening space and struck Noce on the side of the head and face causing injuries which resulted in his death within a few hours thereafter. The piece of metal which struck Noce "weighed two or three pounds." A larger piece of metal, and a part of the same hub liner from which the piece of metal which struck Noce had broken, was found "about four telegraph pole lengths" south of where Noce was struck. Both pieces of metal were in evidence. The hub liner, also referred to as a face plate, is a metal U-shaped device about "a foot and a half across the face." It is placed or fitted "against the inside of the hub of the driving wheels" of locomotive engines. "It takes up the lateral motion between the driving box and the driving wheel . . . keeps the engine from swinging back and forth on the journal" and "keeps down friction." Plaintiff had evidence that the two pieces of the broken hub liner, found at and near the place where Noce was struck and one of which struck him, were "worn," and "worn in several different ways" and the testimony of an expert witness that the "condition" of these pieces "shows that it (the hub liner) had been loose a long time" expressing the opinion that "it was loose the morning the engine left the round house" and that "an experienced engineer" "could tell, from the lateral play of the wheel" that the hub liner "was worn" and loose. Defendant's evidence was that the last roundhouse inspection of this engine, prior to this time, was made on the night of June 23. The inspector testified what was usually done in the course of such an inspection, in reference to these hub liners, and that, on that occasion, he did not discover any looseness or worn condition in any of the hub liners on this engine. Defendant's engineer testified that before starting on the run that morning he made his usual "general inspection" of the engine but "did not pay any attention to this particular face plate" and defendant's own evidence was to the effect that only by an inspection at the roundhouse where the engine would be placed over a pit and the inspector could go under the engine would the conditions which plaintiff's evidence tended to show existed be revealed. The engineer stated that the hub liner which came off and was broken "was off the right front driving wheel." "It is admitted that defendant and deceased were engaged in interstate commerce and that the cause of action is governed by the Federal Employers' Liability Act."

█ Invoking and relying upon the *res ipsa loquitur* doctrine the petition charges general negligence, that is, that "as the direct result of negligence and carelessness on the part of defendant, its agents and servants" the hub liner "was thrown and hurled from" the locomotive engine, striking Noce, inflicting injuries which caused his death and by instructions, given on the part of plaintiff, the cause was submitted to the jury on the theory that the *res ipsa* rule applied. Being an action under the Federal Employers' Liability Act the applicable principles and rules of law as announced by the Federal courts necessarily govern and appellant takes the position that the decisions of the Federal courts, in effect, hold that a plaintiff in an action under the Federal Employers' Liability Act cannot invoke and rely upon the *res ipsa* rule to make a submissible case but must allege, and adduce direct and positive evidence tending to show, that some specific negligence on the part of the defendant caused the injury complained of and therefore since in this action plaintiff relied upon the *res ipsa loquitur* doctrine, and her case is wholly dependent upon the applicability thereof, its "demurrer to the evidence should have been sustained and the peremptory instruction requested at the close of the whole case given." █ Appellant does not contend that if, in this action, reliance upon the *res ipsa* rule is permissible the event itself and the attendant facts and circumstances in evidence do not make out a *res ipsa* case. The defendant had the exclusive control of the engine, the instrumentality or agency which produced the injury, and the exclusive maintenance, inspection and management thereof. The deceased was not connected even remotely therewith. In such circumstances the plaintiff has no means of ascertaining what caused the hub liner to give way or what care, if any, defendant used in the inspection, repair and maintenance thereof. It was concededly an unusual occurrence; such as in its very nature carries an inherent probability of negligence and in the light of ordinary experience such as presumably would not have happened if those charged with care in the premises had exercised due care. The essential conditions of a *res ipsa* case are present. The facts shown make out a case coming within the category of falling objects and similar occurrences such as objects protruding from passing trains or cars to which the *res ipsa* rule has been generally applied. [45 C. J., p. 1201; 20 R. C. L., p. 191; Howard v. C. & A. Railroad Co., 179 Ill. App. 380; Howser v. Cumberland & Pennsylvania Railroad Co., 80 Md. 146, 30 Atl. 906; Delaware & Hudson Company v. Dix, 188 Fed. 901; Thompson v. St. Louis Southwestern Ry. Co., 243 Mo. 336, 148 S. W. 484; Burns v. United Railways Co., 176 Mo. App. 330, 158 S. W. 394.] The Illinois case of Howard v. C. & A. Railroad Co., supra, is very similar, on the facts, to the instant case. The plaintiff in that case was employed by the defendant as a gate keeper at the crossing of a city street

over its tracks. As one of defendant's trains approached the crossing plaintiff lowered the gates and stepped back the usual distance. As the train went over the crossing a piece of iron blow pipe used on locomotive engines "was thrown from the engine" striking plaintiff and causing the injuries complained of. The court held that the plaintiff was entitled to the benefit of the *res ipsa loquitur* doctrine and as to the contention that in a suit by the servant against the master the doctrine did not apply a distinction is made between cases where the injured servant is "operating the instrumentality that causes the injury" and those where "the servant is the same as a stranger as to the operation of the particular thing causing the injury." It is said at 39 Corpus Juris, page 975, that, while there is conflict and "some confusion among decisions relative to the application of" the *res ipsa loquitur* doctrine "as between master and servant, it is generally held that it does apply in that class of actions in a proper case, especially where a statute has abolished the fellow servant rule," as does the Employers' Liability Act. The special and peculiar facts of each case rather than the relationship of the parties determines the application of the doctrine. See Gordon v. Muehling Packing Co., 328 Mo. 123, 40 S. W. (2d) 693, where the subject of *res ipsa* in negligence actions by the servant against the master is thoroughly discussed. Appellants do not cite nor do we find any Federal cases which declare that regardless of the facts and circumstances of the particular case the servant as plaintiff is, merely because the relationship of master and servant existed, precluded from invoking the *res ipsa loquitur* doctrine. In Byers v. Carnegie Steel Co., 158 Fed. 347, l. c. 351, 86 C. C. A. 115, the Circuit Court of Appeals said: "There is no hard and fast rule that the doctrine of *res ipsa loquitur* can in no case be applicable in a suit by an employee against an employer for negligent injuries. On the contrary the rule referred to *(res ipsa loquitur)* has been applied in numerous cases of that nature, the applicability of the rule being determined by the circumstances under which the accident is shown to have happened." In Lowery v. Hocking Valley Ry. Co., 60 Fed. (2d) 78, a case under the Federal Employers' Liability Act, it was held that the *res ipsa loquitur* was applicable in an action by a conductor for injuries sustained in a derailment and in that case the Circuit Court of Appeals (Sixth Circuit) said: "This court has frequently held that the doctrine of *res ipsa loquitur* is applicable to a case between master and servant and has defined the scope and effect of this doctrine. [See Cincinnati, N. O. & T. P. Ry. Co. v. South Fork Coal Co. (C. C. A.), 139 Fed. 528, L. R. A. (N. S.) 533; Byers v. Carnegie Steel Co. (C. C. A.), 159 Fed. 347, 16 L. R. A. (N. S.) 214; Baltimore & O. Railroad Co. v. Kast (C. C. A.), 299 Fed. 419; Cochran v. Pittsburgh & L. E. Railroad Co. (D. C.), 31 Fed. (2d) 769, approved in Chesapeake & O. Railroad Co.

v. Smith (C. C. A.), 42 Fed. (2d) 111.] Compare, also, Central Railroad Co. of N. J. v. Peluso, 286 Fed. 661 (C. C. A. 2); Erie Railroad Co. v. Murphy, 9 Fed. (2d) 525 (C. C. A. 2)." The Kast, Cochran, Smith and Peluso cases cited were under the Federal Employers' Liability Act. We find no reason or logic supporting the theory that merely because the action is governed by the act the employee is thereby precluded from invoking the *res ipsa* rule in a proper case, that is if the occurrence and the attendant and surrounding facts and circumstances are such as to bring the *res ipsa* rule into action.

Appellant cites: Patton v. Railway, 179 U. S. 658; Seaboard Air Line v. Horton, 233 U. S. 492; Looney v. Metropolitan Railroad Co., 200 U. S. 480; Delaware, etc., Railroad v. Koske, 279 U. S. 7; N. Y. C. Railroad Co. v. Ambrose, 280 U. S. 486; Mo. Pac. Ry. Co. v. Aeby, 275 U. S. 426; Payne v. Bucher, 270 Fed. 38. The Patton and Looney cases were decided prior to the enactment of the Employers' Liability Act. The other cases were under the act. It was held in the last case Payne v. Bucher that the facts shown were not sufficient to invoke the *res ipsa* doctrine. None of the other cases were *res ipsa* cases and none of the cases cited discuss or rule the applicability of that doctrine in actions governed by the act or in negligence actions by a servant against the master. Pointing to pronouncements and observations appearing in these opinions such as, that in actions under the Federal Employers' Liability Act "the carrier is not liable because of any defect or insufficiency in plant or equipment not attributable to negligence" (Koske case); "fault or negligence on the part of" the employer "may not be inferred from the mere fact that" the employee "fell and was hurt" (Aeby case); and "the fact of an accident carries with it neither proof nor presumption of negligence on the part of the employer. Negligence of the employer is an affirmative fact to be established by one speaking for the deceased employee" (Payne v. Bucher); appellant argues that such pronouncements of the Supreme Court of the United States, in effect, preclude reliance upon the *res ipsa* doctrine in any case governed by the Federal Employer's Liability Act. Certainly the mere fact, and nothing more, that the employee was injured while in the line of duty is not sufficient to bring the *res ipsa loquitur* doctrine into action but it is incumbent upon the plaintiff seeking to invoke it to show by facts and attendant circumstances the existence of the conditions essential to the application of the doctrine. As was said by the Supreme Court of the United States in Sweeney v. Erving, 228 U. S. 233, 238, "The general rule in actions of negligence is that the mere proof of an 'accident' (using the word in the loose and popular sense) does not raise any presumption of negligence; but in the application of this rule, it is recognized that there is a class of cases where the circumstances of the occurrence that has caused

the injury are of ,a character to give ground for a reasonable inference that if due care had been employed, by the party charged with care in the premises, the thing that happened amiss would not have happened. In such cases it is said, res ipsa loquitur the thing speaks for itself; that is to say, if there is nothing to explain or rebut the inference that arises from the way in which the thing happened, it may fairly be found to have been occasioned by negligence.'' While concededly the burden is upon plaintiff to show that the injury sustained was ''attributable to negligence'' on the part of the carrier, that is, that it was caused by the ''negligence of'' the defendant carrier's ''officers, agents or employees'' or ''by reason of'' a ''defect or insufficiency, due to its negligence, in its cars, engines,'' etc. (Employers' Liability Act, 45 .U. S. C. A., sec. 51), ''the prevailing, if not unanimous, view is that the rule of res ipsa loquitur prescribes, as a substitute for specific proof, one .method by which plaintiff may prove'' such negligence. [45 C. J., p. 1198.] Again at 45 Corpus Juris, pages 1196, 1197, the matter is stated in this way: ''This rule (res ipsa loquitur) when applicable to the facts and circumstances of a particular case is not intended to and does not dispense with proof of culpable negligence on the part of the party charged, but on the contrary, being a substitute for specific proof of acts or omissions constituting negligence, it merely prescribes one method by which plaintiff may prove the negligence charged against defendant and determines and regulates what shall be prima facie evidence thereof.''

We have perhaps unduly prolonged this discussion in view of the fact that this very contention is fully and ably discussed and ruled by this court in Williams v. St. Louis-San Francisco Railroad Company (appellant here), 337 Mo. 667, 85 S. W. (2d) 624. In that case this same defendant, represented by the same counsel appearing in its behalf in this cause, makes identically the same contention and rests it upon the authority of the same cases above listed. Expressions in the above cases relied upon by appellant should necessarily be examined in the light of the facts of the particular case. That is done in the Williams case where each of these cases is reviewed and examined and the opinion then says: ''In the above-mentioned cases and others we have reviewed, the courts have generally held and properly so, that the mere fact of accident carries with it no presumption of negligence. There is nothing in any of the cases that defendant, in the case at bar, cites, that holds that the res ipsa rule may not be invoked in an action under the Federal Employers' Liability Act.'' The opinion then cites and reviews numerous cases under the Federal Employers' Liability Act wherein Federal Circuit Courts of Appeals and the highest state appellate courts, with certiorari denied by the. Supreme Court of the United States, have ruled that under appropriate facts

and conditions the *res ipsa* doctrine is applicable (and many other like cases could be cited), and holds: "It is our conclusion that the *res ipsa* rule in a proper case may be invoked under the Federal Employers' Liability Act." We have heretofore pointed out that the conditions shown, in the instant case, make a proper case for the application of the *res ipsa* rule if it be recognized and allowed at all in an action under the Federal Employers' Liability Act, and that is not even questioned by appellant; therefore upon the authority of the Williams case, supra, we rule against the contention appellant makes concerning the applicability of the *res ipsa* rule.

Another ground urged by appellant in support of its demurrer to the evidence is that the evidence showed that sometime prior to the trial plaintiff had been discharged as executrix by an order of the probate court and that she was therefore without legal capacity to maintain the action. Noce died testate. He was survived by his wife and their three minor children. The wife was named as executrix in the will and pursuant thereto she was appointed executrix letters testamentary issuing out of the Probate Court of Jefferson County on July 2, 1929. The Employers' Liability Act vests the cause of action for death of an employee in the "personal representative" of the deceased employer "for the benefit of the surviving widow or husband and children of such employee; and, if done, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee." As executrix the widow commenced this action on October 8, 1929, for the benefit of herself and children. Defendant's answer alleges "that on the 11th day of October, 1930, plaintiff was discharged as executrix of said estate by the Probate Court of Jefferson County." The trial herein was in January, 1932. Plaintiff put in evidence a copy of the letters testamentary under the certificate of the judge and *ex officio* clerk of the Probate Court of Jefferson County. The certificate was in conventional form but contained this further statement "I further certify that the said Dora Noce is still the qualified and acting executrix of said estate." The certificate was under date of December 3, 1930. Defendants put in evidence a certified copy of the record of the Probate Court of Jefferson County showing that on September 27, 1930, plaintiff filed and that court approved a "final settlement" and the order of the court further states: "Executrix will stand discharged" upon the filing of receipts for legacies and on October 11, 1930, the following order was entered of record: "Dora Noce Executrix files final receipts of Legatees and is discharged." Plaintiff's counsel then sought to show by a letter from the probate judge to plaintiff's counsel that shortly thereafter the order of discharge was set aside but defendants objection thereto was sustained. If, as appellant contends such an order of discharge operates to finally and fully terminate the authority and office of executrix then

unless the order was duly set aside appellant's contention is well made and we cannot concur in respondent's contention that the statement inserted in the certificate of December 3, 1930, affords any substantial evidence, or is sufficient to show, that an order was duly entered setting aside the previous order of discharge and overcome the record of the discharge which defendants put in evidence. So far as the record here shows the order of discharge was not set aside nevertheless it is our opinion that it did not affect the right and authority of plaintiff to continue in the office of executrix until all the duties and responsibilities thereof were concluded. While the order operated as a final discharge as to the particular accounts stated therein it did not terminate the office of executrix and discharge plaintiff from that trust. The right to institute and maintain this action is a part of the executrix's trust. True she does not maintain the action for the benefit of the estate but it is brought and carried on by her under authority and by virtue of her office. Her appointment as executrix was not revoked, she did not resign nor was she removed from that office and continues as executrix until the trust imposed thereby is discharged and the duties thereof completed. [Wyatt v. Stillman Institute, 303 Mo. 94, 260 S. W. 73; Fraser v. Fraser, 149 Ill. App. 186; Weyer v. Watt, Exr., 48 Ohio St. 545; Hazlett v. Estate of Blakely, 70 Neb. 613, 97 N. W. 808.]

Appellant next assigns as error the giving of plaintiff's instruction submitting the case under the res ipsa rule. No complaint is made as to the form of the instruction and what we have said, supra, as to the applicability of the res ipsa loquitur doctrine disposes of the assignment.

█ The refusal of an accident instruction is assigned as error. The facts supply circumstantial evidence, and warrant an inference, of negligence on the part of defendant but do not "compel such an inference" by the jury. [McCloskey v. Koplar, 329 Mo. 527, 46 S. W. (2d) 557; Sweeney v. Erving, 228 U. S. 233.] Defendant offered evidence tending to show due care on its part in the inspection and maintenance of the hub liner in good condition and in proper alignment. Appellant says, "There is a probability that the break in the hub liner was caused by a latent defect which was not and could not have been discovered by defendant;" however there was no evidence tending to show that any inherent, latent or concealed defect existed in the metal or opinion or other evidence offered tending to show the intervention or operation of some force or action which could not have been timely known or discovered by the exercise of due care. So the issue was simply defendant's negligence vel non. In the state of the evidence we hold the trial court did not err in refusing the accident instruction. [Hogan v. Kansas City Public Service Co., 322 Mo. 1103, 19 S. W. (2d) 707.]

█ Appellant's last assignment is that even after the remittitur

of $20,000 the judgment entered for $25,000 is "grossly excessive." As enhancing the damages it is alleged in the petition that deceased "suffered excruciating pain while he was conscious and so suffered conscious pain for a period of five hours for which conscious pain and suffering plaintiff is entitled to recover damages in the sum of $10,000." The jury were instructed that if they found for plaintiff in awarding damages they could "allow plaintiff, as damages, such sum, if any, not exceeding $10,000, as" they "believe and find from the evidence would be a fair and reasonable compensation for the conscious pain and suffering, if any," the deceased "suffered from the time of his injury until his death." No complaint is made that this was not a proper element of damage or that it was not properly submitted. The jury were not required to do so and the verdict does not separately designate the amount allowed on account of conscious pain and suffering nor is the question whether that should have been done before us. We therefore have no way of knowing how much the jury allowed for conscious suffering. They were authorized to allow the full amount asked, $10,000. Presumably they did so. More than three hours elapsed between the injury and death during which time Noce was conscious and all the witnesses on that point concur in saying that he suffered intense and excruciating pain. It was necessary to strap the dying man to an ambulance cot as his agony was such that he struggled to rise, making frantic attempts to "get up" from the cot and "to break the window." He made repeated attempts to talk but all those about him could distinguish were pleas that some one help him, do something for him. On the authority of Talbert v. Chicago, Rock Island & Pacific Ry. Co., 321 Mo. 1080, 15 S. W. (2d) 762, an allowance of that amount for conscious suffering will be permitted to stand. In that case this court, en banc, held that an award of $10,000 for conscious suffering for one hour was not excessive as a matter of law. [See, also, Goyette v. St. Louis-San Francisco Ry. Co., 37 S. W. (2d) 552.] As to damages for pecuniary loss and other proper elements of damage. Noce was fifty-four years of age at the time of his death and his life expectancy 18.9 years. The wife, age forty-seven, and three minor children ages, nineteen, eleven and nine, survived. The family resided on a small farm which through his labors produced, and supplied the family with, many of the necessities of life. He cut wood from trees on the land and supplied the fuel. He carried on a "truck garden" business, kept cows, supplied the family with milk, sold milk and carried on a dairying business, in a small way; raised chickens and sold chickens and eggs and raised hogs. Plaintiff's evidence was that the value of Noce's contributions to his family from his labor on the farm, where he worked early and late, before and after his work hours on the section, approximated $75 a month. Noce's wages on the section were from $75 to $80 a month. His

personal expenses were small. His earnings and contributions to his family, as shown by plaintiff's evidence, considered and applying the rule that the amount of damages allowed for pecuniary loss be limited to the present cash value of the contributions of which the wife and children would be deprived over the period of life expectancy based on the earning power of money respondent arrives at an amount from $22,000 to $24,000. This is reducing the matter to mathematical calculations but courts recognize that there are many elements and contingencies that enter into these calculations and which may properly be considered. Thus respondent estimates that the widow and children would be deprived of earnings of the deceased aggregating $1680 a year and points out that the present value of an annuity of $1680 for nineteen years is dependent upon the rate of interest to be used in determining the earning power of money; that the interest rate "ought to be such that the principal will be safe in an investment such that financial experience is not essential to its making" (Gill v. Baltimore & Ohio Railroad Co., 302 Mo. 317, 259 S. W. 93), that it is commonly known that tax-exempt securities bear a comparatively low rate of interest and that as to other investments taxes must be considered (Goyette v. St. Louis-San Francisco Ry. Co., supra). Respondents then demonstrate that at three per cent net the present cash value of such an annuity for nineteen years would be $24,063.98 and at four per cent net it would be $22,064.95. Assuming that the jury allowed $10,000 for conscious suffering there remains of the judgment $15,000 to cover pecuniary loss or if it be assumed that but $5000 of the judgment, which the appellant suggests as a fair amount to cover that element, was intended as damages for conscious suffering then $20,000 remains for pecuniary losses. We have concluded that the final amount of the judgment as approved by the trial court, considered in the light of the facts most favorable to respondent, is not excessive.

Finding no reversible error the judgment of the circuit court is affirmed. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.