DENISON & SHERMAN RAILWAY COMPANY v. J. L. CRAIG ET AL.

Decided April 20, 1904.

**1.—Street Railway—Ordinary Cars—Protruding Steps—Contributory Negligence.**

Plaintiff was not guilty of contributory negligence in stepping back from the track, upon the approach of a car, only a sufficient distance to avoid being struck by cars such as were ordinarily run on said track, he not knowing that the steps on the car which struck him extended further out from the body of the car than those generally in use and not being able to ascertain such fact because of the blinding light on the car.

**2.—Negligence—Discovered Peril—Steps on Car.**

Evidence considered and held to show negligence on the part of a motorman on a street railway car in failing to stop or check the speed of a car, on seeing plaintiff dangerously near the track, where the steps extended out further from the body of the car than those generally in use on that line.

**3.—Discovered Peril—Motorman—Acting on Presumption.**

An engineer or motorman may not act upon the theory that a person on or near the track, who sees the car approaching, will get out of the way of danger, after it becomes reasonably apparent that this will not be done.

Appeal from the District Court of Grayson. Tried below before Hon. J. M. Pearson.

Head & Dillard, for appellant.

J. A. Templeton, for appellee.

JAMES, CHIEF JUSTICE.—Judgment was rendered against appellant in favor of James Watt Craig, a minor (of 17 or 18 years of age when injured), for $500, and J. L. Craig, his father, for $100, on account of a personal injury to the former.

The assignments, in substance, present the questions of the sufficiency of the testimony to show a case of negligence on the part of appellant, and that the testimony indisputably shows that the boy was guilty of contributory negligence, and that he assumed the risk of the danger existing in the conditions wherein he received his injury.

The following facts were in evidence: The night was drizzling and very dark. James Watt Craig was a student of Austin College, in Sherman, and went to the crossing of College Street and Grand Avenue for the purpose of meeting some young ladies from town whom he had invited to an entertainment at the college that evening, and whom he was expecting on appellant's car. Professor Bondurant was there also to take a car back to town. The cars ran along Grand Avenue and the car in question came from the south. It appears that cars stopped at this place when signaled. The car in usual use on Grand Avenue was a small one six feet six inches wide, the steps of which hardly came out flush with the body of the car. The car in use on this occasion was known as an interurban car, which was much larger. These were a little less than nine feet in width on most of which the steps extend out an inch or an inch and a half. The car in question had a step which extended out about six inches. It was being run as a special

to convey some young ladies to a point beyond this crossing, with orders not to pick anybody up and to stop only at the other place. There was evidence that the unusual size of this car and the unusual projection of its step were unknown to plaintiff, and that the intense and blinding light from the car at which he was looking prevented his discovering or appreciating these facts. After signaling the car, he stepped back from the track, though not quite as far as Professor Bondurant did. The car approached rapidly and passed them without stopping or checking and the step struck plaintiff on the knee. The motorman testified that he was 100 or 150 feet away when he saw plaintiff on the track and when he stepped away from the track, but also said he whistled about a block away. Also: "I thought at the time he was standing there at the track that he had a foot to play on to be in the clear. I didn't know the width of the car then; I just judged he was about three feet away. Passengers stand close; they all stand close; I didn't think I was taking any chance in running up there that way; I thought he was clear." He stated further: "I couldn't say how far he was from the track; my best judgment is that he was about three feet, something like three feet; I *knew* he was within three feet of the track." This car extended out two feet from the track and the step went out six inches further. Plaintiff testified that he supposed all the cars were the same width, that he could not see the step at all, and did not know that the car had protruding steps. It is very clear that an ordinary car would not have struck plaintiff.

Ordinances of the city were shown, which required appellant to stop cars in the shortest time and space possible on the first appearance of danger to persons on the track or moving toward it; also to have a whistle, and on the approach of danger to any person to give the alarm by blowing said whistle.

As already said the questions presented are: (1) Was plaintiff guilty of contributory negligence and did he assume the risk, as a matter of law? (2) Was there sufficient evidence of negligence on the part of defendant?

There is no difficulty in answering the first of these questions in the negative. The position which the boy took was a safe one with reference to the ordinary cars which defendant used and with which he was familiar, and he had no notice or knowledge, up to the time he was struck, that the car was different, according to his testimony. The evidence admitted of such finding which would exonerate him from negligence. The same facts would exclude the idea of an assumed risk, if such theory has any place in this case as a distinct issue from contributory negligence.

As to defendant's negligence we think the evidence is amply sufficient to support such finding. The jury were not obliged to accept the motorman's statement that he did not know the dimensions of the car. They would have been warranted in believing that he must have known the reach of the step, if indeed defendant could be heard to say that it or

its servants were ignorant of such fact. The step went out two and one-half feet from the track, and the motorman says he knew plaintiff was standing within three feet. If he knew this under the circumstances while approaching plaintiff, the latter must have been perceptibly within three feet, or in other words dangerously close. He was close enough to suggest danger, as would appear from the fact that the motorman must have made a calculation on the probability of striking him or not striking him.

In Texas & P. Ry. Co. v. Ball, 96 Texas, 624, it is said: "The plaintiff's testimony must be sufficient to show that Ashley Ball was at some point on or near the railroad track within the range of vision of the engineer, while he was looking ahead in the discharge of his duty, in order to raise a presumption that the engineer did in fact see Ashley Ball in his perilous position in time to have given warning, or to have stopped or checked the train or by some means at hand to have prevented inflicting injury upon him."

The testimony in this case shows that the motorman for a considerable distance saw plaintiff assume the position he had taken, which was in fact a dangerous one in view of the construction of this car. He knew also that persons signaling a car to stop "all stopped close," from which testimony it naturally would be understood that they would stop close and remain close. He saw the entire situation and even considered and weighed the chances of the car passing plaintiff without striking him, which implied that he did not expect plaintiff to change his position. The jury, as already stated, were not required to believe that the motorman did not know the dimensions of his car and the reach of the step. He testified that he didn't know plaintiff wanted the car to stop; he thought that, and it wasn't his intention to pick him up. It would seem from this that he was intent on his orders, and did not intend to stop. Under these circumstances it was admissible for the jury to conclude that the motorman saw that plaintiff was exposed to danger if the car proceeded, and was negligent in not stopping or checking the car, or in not giving the danger signal.

The rule that an engineer or motorman may act upon the theory that a person on or near the track, who sees the train or car approaching, will get out of the way of danger, has no application after it becomes reasonably apparent that this will not be done. Appellant knew that the public would naturally regulate their conduct with reference to its cars that it had in common use, as the plaintiff was doing in this instance, and knew that this was not that kind of a car. The fact appears that the motorman continued to run his car with the idea that it would pass plaintiff where he was standing without its hitting him, and not upon the theory that he believed the latter would change his position.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.