## Louisville & Nashville R. R. Co. v. McMillen.

### (Decided February 14, 1911.)

### Appeal from Bullitt Circuit Court.

1. Railroads—Train With Loose Piece of Iron Attached to It—Negligence—Absence of Reasonable Diligence.—Where a train was sent out with a loose piece of iron attached to it, or if it was discovered, or could have been discovered by the exercise of ordinary care after the train was out by those in charge of it, it was negligence to permit it to be moved in that condition, and it was their duty to make reasonable inspections for the purpose of ascertaining this fact, if it existed, and if they failed to do this it was negligence.

2. Same—The train was under the management of appellant's servants and the injury to appellee caused by a piece of iron falling from it and striking him under the circumstances detailed would not have happened had those in charge of the train exercised reasonable care.

vol. 142—9

CHARLES CARROLL, CHARLES H. MOORMAN, J. F. COMBS and BENJAMIN D. WARFIELD for appellant.

BEN CHAPEZE for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

Appellee was running a pumping station at night for appellant at a point on its road where it crossed Rolling Fork river, the line between the counties of Hardin and Bullitt. He had been so engaged for about twenty months, when on the night of July 21, 1909, he passed from the pump house into a coal bin to get some coal to fire the furnace, and while stooping to shovel up the coal something hit him just below the small of the back and rendered him senseless, in which condition he remained, according to his testimony, from thirty minutes to two hours, the exact time not known. When he recovered he called for a person who was in the pump house who came out and found him sitting upon the floor of the bin with his head leaning forward and a flat piece of iron, about the size of a person's two hands, by his side. Appellee crawled to the pump house a few steps away and remained there about fifteen minutes when he, assisted by Waverly French and Wm. Bryant, who happened to be at the pump house, started for home with his wife and children. Appellee used a plank in walking and the witnesses described to the jury how he used it, but it is not made plain to the court just how he used it, other than he held it with both hands. According to appellee's testimony he remained at home about two months and was confined to his bed most of that time by reason of his injuries. He testified that he had pains in the lower part of his back and right leg all the time; that at the end of the two months when he did get out he was compelled to use crutches in order to walk and was using them at the time of the trial in the lower court. He was corroborated in these statements by French, Bryant and four or five of his neighbors. Two physicians also supported him in his statements but were contradicted by at least two other physicians who testified for appellant and swore that they examined appellee soon after he received his professed injuries and found nothing wrong with him, except his right leg was slightly smaller than the other, and that this had been caused by non-use.

A freight train passed upon the bridge at the time appellee was getting the coal, and all the witnesses swore

that the piece of iron found by his side when he was hurt came off of a freight car door; that it fastened to the bottom of the door for it to slide on when it was opened or closed. Appellee said he heard it strike the pump house and the next instant it struck him and knocked him senseless. The witnesses fix the height of the bridge at from twenty to thirty feet.

Appellant also pleaded contributory negligence on the part of appellee and proved by two of the managers of its pumping stations that they had warned appellee not to go into the coal bin when a train was passing on the bridge. Appellee denied this but says that he knew it was somewhat dangerous and that he seldom went out when a train was going by; that he did not know a train was passing at the time he arrived at the coal bin; that it was dark and he saw no lights; that the train entered upon the bridge after he went into the coal bin and that he thought he would get his coal before he returned to the pump house, as he needed it to fire with.

The lower court gave the jury three instructions, the first, which fixed the only basis upon which appellant might recover, is as follows:

"The court instructs the jury that if they shall believe from the evidence that the plaintiff was struck and injured by the piece of iron exhibited in evidence, or a piece of iron similar thereto, and that said piece of iron was caused to fall from one of the defendant's trains by negligence upon the part of its agents and servants in charge of said train, or upon the part of the agents and servants whose duty it was to inspect said train, then the law of the case is for the plaintiff, and the jury should so find."

As we understand counsel's brief, they do not object to the form or substance of the instructions given, but claim that it was the court's duty to give only a peremptory instruction in behalf of appellant. Their first reason for this contention is that there was no proof showing that this piece of iron was negligently allowed to fall from the train; and the second is that the testimony showed that appellee was malingering. The testimony shows that this piece of iron fell and struck appellee while a freight train was crossing the bridge and that it was a piece of iron which belonged on the door of a freight car. As we understand the law it was not required of appellee to show that the car had not been in-

spected and made safe to go out on the road, or that a car door upon that particular train was minus the piece of iron exhibited to the jury. This burden was upon appellant, and it did prove by its conductor, who was in the caboose, and its engineer, who was in the engine cab, that they did not see or hear any iron fall; and it further proved by its two car inspectors in Bowling Green, where the train arrived three or four hours after the accident, that they inspected the train and found nothing wrong with the cars.

When appellee entered into the employment of appellant he assumed all the ordinary risks incident to that employment, but he did not assume the risks occasioned by the negligence of other employes who were not his fellow servants. If this train was sent out on the road with a loose piece of iron attached to it, or if it was discovered or could have been by the use of ordinary care after the train was out by those in charge, it was negligence in permitting it to be moved in that condition and it was their duty to make reasonable inspections for the purpose of ascertaining this fact, if it existed, and if they failed to do so they were guilty of negligence. The train was shown to have been under the management of appellant, or its servants, and the accident was such as, in the ordinary course of things, would not have happened if those having the management, use and care had exercised reasonable diligence.

It appears in the case of L. & N. R. R. Co. v. Clark, 106 S. W., 1184, that a lump of coal fell from a tender and struck Clark, a brakeman, upon the head. His evidence showed that fact and the railroad company claimed that it also devolved upon him to prove the tender was improperly loaded, but this court said it devolved upon the railroad company.

There was no evidence that appellee was guilty of contributory negligence. The question of his malingering was before the jury. If his injuries were as great and as permanent as the testimony tends to establish, the verdict for $2,000 is small.

For these reasons, the judgment of the lower court is affirmed.