### DELAWARE & H. CO. v. DIX.

(Circuit Court of Appeals, Third Circuit.   June 23, 1911.)

#### No. 13.

**1.** RAILROADS (§ 282*)—INJURIES TO LICENSEES—PRESUMPTION AND BURDEN OF PROOF—RES IPSA LOQUITUR.

Plaintiff's intestate was conductor of a freight train of another company which was using the tracks of defendant railroad company, and was killed while his train was passing a meeting train of defendant on a parallel track.   Plaintiff offered evidence tending to show that at the time of the accident intestate was kneeling on a bench in the caboose, with his arms resting on the sill of a small window in the side of the caboose and facing it, and while in this position, occupied by him in the performance of his duty, a freight train of defendant company was passing in the opposite direction to that of his train and on an adjacent track; that one of the cars of defendant's train was a refrigerator car in which was a door; and which door had upon it an appliance consisting of a movable iron lever attached to bolt bars used for locking the car door; that this door was negligently allowed to be open, and by the movement of the train it was caused to swing outwardly at right angles to the car, and that the lever, also upon the car door, projected further, at right angles from the middle of the door, so as to reach over the space between the sides of the passing trains; that this projecting lever, while the car was passing the caboose, struck the side of the caboose, and as it passed along the side of the caboose, when it reached the window, struck the decedent on the left side of the neck, almost severing the head from the body, and pulling him violently from the window of the caboose, and thus instantly killing him.   The lever was of sufficient length to reach the caboose and extend some distance into the window.   Under ordinary conditions intestate's position was not one of danger from passing trains. *Held*, that such evidence was sufficient under the doctrine of res ipsa loquitur to create a presumption of negligence on the part of defendant which cast upon it the burden of proof and that the case was properly submitted to the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 912, 919; Dec. Dig. § 282.*]

**2.** NEGLIGENCE (§ 121*)—"RES IPSA LOQUITUR."

"Res ipsa loquitur," the thing speaks for itself, symbolizes that the occurrence of the injury raises a presumption of culpability on the part of the owner or manager of an apparatus.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 218, 225; Dec. Dig. § 121.*

For other definitions, see Words and Phrases, vol. 7, pp. 6136–6139; vol. 8, p. 7787.]

In Error to the Circuit Court of the United States for the Middle District of Pennsylvania.

Action at law by Anna A. Dix against the Delaware & Hudson Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Welles & Torrey, for plaintiff in error.

M. S. Kaufman and R. L. Levy, for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and YOUNG, District Judge.

YOUNG, District Judge. Anna A. Dix, defendant in error, plaintiff below, brought this action against the Delaware & Hudson Company, plaintiff in error, defendant below, in her own behalf and that of her children, to recover damages for an injury caused by the alleged negligence of the defendant and resulting in the death of Walter Dix, her husband. The evidence in the case shows that Walter Dix, on January 4, 1908, at 10:40 p. m., was employed by the Erie Railroad as a conductor, and was riding in the caboose attached to a freight train of the Erie Company.

[1] The plaintiff offered evidence tending to show that at the time of the accident Walter Dix was kneeling on a bench in the caboose, with his arms resting on the sill of a small window in the side of the caboose and facing it, and that while in this position, occupied by him in the performance of his duty, a freight train of the defendant company was passing in the opposite direction to that of the Erie train on an adjacent track; that one of the cars of the defendant's train was a refrigerator car in which was a door; that this door had upon it an appliance consisting of a movable iron lever attached to bolt bars used for locking the car door; that this door was negligently allowed to be open, and that by the movement of the train it was caused to swing outwardly at right angles to the car, and that the lever also upon the car door projected still further at right angles from the middle of the door, so as to reach over the space between the sides of the passing trains; that this projecting lever upon the door, while the car was passing the caboose, struck the side of the caboose, and as it passed along the side of the caboose, when it reached the window, struck the decedent on the left side of the neck, almost severing the head from the body, and pulling him violently from the window of the caboose, and thus instantly killing him.

The Erie train upon which the deceased was riding consisted of two engines and a caboose, and was running south on tracks of the defendant company. The freight train of the defendant company was running in the opposite direction upon tracks of the defendant company adjacent to the tracks upon which the Erie train was running, and this train consisted of an engine and some 12 or 15 cars. The caboose was a car having built on the top of it what is known as a "cupola." On the side of the caboose, and a few feet from the floor, a bench ran along the side of the caboose just below an open window. In the cupola of the caboose were two seats, one on the left-hand side of the caboose and the other on the right. Scheusenack, a brakeman in the crew of the Erie train, sat in the cupola on the right-hand side, and Plath, also a brakeman in the crew of the Erie train, sat on the

left side in the cupola. Dix was kneeling upon the bench with his arms resting on the sill of the window on the right-hand side of the caboose, and at the side where the defendant's train was passing. There was a light in the caboose which shone over the back of Dix and through the window. Mr. Scheusenack was the principal witness of the accident, and he testified:

"I heard the sound of that door strike the front end of the caboose. * * * After I heard the noise of the car strike the front end of the caboose, it called my attention to the car, and I saw what it was; and just as I looked down I saw Mr. Dix going out of the window and right by his back I saw the refrigerator door pass by. * * * It was open. * * * Q. Will you please describe to the jury what marks there were upon the body, if any? A. Mr. Dix had a great big mark from here on, a way down here (indicating). Q. On which side of the head? A. On the left side. Q. What sort of a mark was it? A. It was a great big cut, just jerked right out. Q. How deep was that cut, if you know? A. It was quite deep. The head was almost tore off. Q. Was the left side of the face battered any at all? A. Yes; it was scratched. * * * Q. What other marks were on his head? A. There was a mark on the head where he struck the frame of the caboose, on the right side, and there was a mark on the left side here (indicating), and the middle of his head. Q. What was the condition of his face? A. The face was scratched. Q. On which side? A. On the right side. * * * Q. You only judge from the appearance of the door that it was a refrigerator car? A. I don't judge. I seen it."

Charles J. Plath, a brakeman, who was in the cupola of the caboose, thus described the occurrence:

"Q. What kind of a noise was that you heard? A. A kind of dumb noise, a kind of a bang. Q. When you heard that bang, what happened? A. I twisted right around and seen Mr. Dix was going out of the window, looked like that, and he was gone."

It appears from the evidence that, if the refrigerator door were open and the lever were projecting from it, it would have a reach of 36 inches. As the evidence shows the distance between the sides of the trains in passing was $33\frac{1}{4}$ inches and as the lever upon the door would reach 36 inches, it would allow the lever to project within the car window a distance of $2\frac{1}{4}$ inches. It thus appears from the plaintiff's evidence that the brakeman, Scheusenack, heard the noise of something striking the side of the car, saw Dix go out at the window, and saw the swinging door of the refrigerator car. From the noise of something striking the side of the car while the train was passing, from the evidence that there was a swinging car door, that refrigerator car doors are so constructed with bar and lever that, when open, the lever will fly out straight at right angles to the car, that, if such lever was out, it would reach within the side of the caboose or into the window; and that the man disappeared through the window, that he was pulled out, and that he went so violently as to strike his heels against the top of the window—it is to be reasonably inferred that he was pulled from the train by the projecting lever of the car door on the passing train, as there is no evidence, or any pretense, that there was any obstruction or fixed obstacle between the tracks at this point. The evidence that he was pulled out by something outside is strengthened by the evidence of the deep cut on the left side of the neck almost severing the head and the marks of the blood and flesh extending from the window through which he was drawn.

Unless, then, the plaintiff was required to go further and show that the defendant knew, or ought to have known, that the car door was loose, then the motion for a nonsuit was properly refused, as also the motion for judgment non obstante veredicto. Under the doctrine, therefore, of res ipsa loquitur, was the plaintiff required to prove more? That doctrine is clearly stated by Wigmore in his work on Evidence (volume 4, § 2509), as follows:

"With the vast increase in modern times of the use of powerful machinery, harmless in normal operation, but capable of serious human injury if not constructed or managed in a specific mode, the question has come to be increasingly common whether the fact of the occurrence of an injury (unfortunately now termed 'accident' by inveterate misuse) is to be regarded as raising a presumption of culpability on the part of the owner or manager of the apparatus. 'Res ipsa loquitur' is the phrase appealed to as symbolizing the argument for such a presumption. In England, a rule of that sort has for a generation been conceded to exist, for some classes of cases at least. In the United States, the presumption has spread rapidly, although with much looseness of phrase and indefiniteness of scope. As against a common carrier, the presumption against a bailee (ante, section 2508) has perhaps helped to confirm the rule where injury to goods or passengers is involved. What its final accepted shape will be can hardly be predicted. But the following considerations ought to limit it: (1) That apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection or user. (2) Both inspection and user must have been at the time of the injury in the control of the party charged. (3) The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured. It may be added that the particular force and justice of the presumption, regarded as a rule throwing upon the party charged the duty of producing evidence, consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him, but inaccessible to the injured person."

Let us apply these limitations to the case at bar. The first of these requires that:

"The apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection, or user."

This applies directly to the case at bar. No injurious operation was to be expected by one a passenger or lawfully upon the Erie train from the passing freight or from any car or appliance attached to the car.

Second:

"Both inspection and user must have been at the time of the injury in the control of the party charged."

This applies directly. The train and its cars and defective door and apparatus were in the absolute control of the defendant.

Third:

"The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured."

This applied directly, because the accident happened to Mr. Dix, irrespective of any voluntary action of his. He was occupying a position he had a right to occupy as conductor of the train. Even if his body projected somewhat from the car, it was not negligence, as his business as a trainman might require him to see out to look ahead,

and, as was said by the learned trial judge, it was not the same as though he were a passenger.

So regarding the doctrine by this construction, the doctrine would apply. But we must consider the doctrine to determine whether or not the plaintiff proved sufficient to raise the presumption of negligence on the part of the defendant and thereby require defendant to explain the injury.

[2] "Res ipsa loquitur," the thing speaks for itself, symbolizes that the occurrence of the injury raises a presumption of culpability on the part of the owner or manager of the apparatus, because in cases where it applies powerful and dangerous agencies in the control of one will do harm unless properly constructed or managed, and also because the evidence of the cause of the injury, whether innocent or blameworthy, is in the possession of, or accessible to, the person constructing or operating, and not accessible to the other party. Erle, C. J., in Scott v. London & St. K. Docks Co., 3 H. & C. 596 (injury to a passer-by from the falling of goods from a train), said:

"There must be reasonable evidence of negligence, but, when the thing is shown to be under the management of the defendant or his servants and the accident is such as in the ordinary course of things does not happen when those who have the management use proper care, it affords evidence in the absence of explanation by the defendant that the accident came through want of care."

How completely this applies to the case at bar. Such an accident would not happen in the ordinary use of a refrigerator car, unless the defendant was negligent in permitting it to have its door open with an extending lever. It had in its possession the evidence by which it might be explained.

Not only is this the doctrine of the English cases, but of many of the states and of the federal courts. Cincinnati R. R. Co. v. South Fork, 139 Fed. 533, 71 C. C. A. 316, 1 L. R. A. (N. S.) 533; Kansas Railroad Co. v. Stoner, 49 Fed. 209, 1 C. C. A. 231. Wallace, J., in Rose v. Stephens & C. Trans. Co., 20 Blatch. 411, 11 Fed. 438, says:

"The presumption originates from the nature of the act, not from the nature of the relations between the parties. It is indulged as a legitimate inference whenever the occurrence is such as in the ordinary course of things does not take place when proper care is exercised, and is one for which the defendant is responsible." Holbrook v. Railway Co., 12 N. Y. 236, 64 Am. Dec. 502; Inland, etc., v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270.

There can be no doubt the doctrine applies properly in this case. Nor can it be doubted, as is shown by the evidence and the reasonable inferences from it, the plaintiff raised the presumption of negligence, and the burden was then shifted to the defendant to explain the occurrence of the injury. This it attempted to do, but the whole case was for the jury, and was carefully submitted with very clear instructions by the court. The verdict for the plaintiff results. The charge of the court was fair, and, if any error was made by the court, it was in favor of the defendant.

The court was right in submitting the case to the jury, and in refusing to enter judgment for defendant non obstante veredicto, and the case is therefore affirmed.