MARIE SCHULZ, ADMINISTRATRIX OF THE ESTATE OF CARL SCHULZ, DECEASED, PLAINTIFF-APPELLANT, v. NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD COMPANY, DEFENDANT-RESPONDENT.

Submitted March 22, 1915—Decided June 14, 1915.

1. Where the testimony at the trial showed that plaintiff's intestate was walking along the centre of the platform of defendant railroad company, the platform at that point being about five feet in width; that a train of the defendant company, going at a

high rate of speed, passed the platform, without any warning or notice of its approach being given, and the deceased was drawn toward the train and thrown to the platform with fatal results— *Held*, that the questions of the negligence of defendant or the negligence attributed to the deceased were for the determination of the jury.

2. Where the complaint alleged that the train "did with great force and violence strike, draw to it, and drag along the said Carl Schulz," &c., there was enough in the complaint to have warranted the plaintiff to have based her claim for damages on the theory that deceased had been drawn toward the train by suction, especially since the case was tried on that theory without objection from defendant.

On appeal from the Supreme Court.

For the appellant, *Ward & McGinnis.*

For the respondent, *Collins & Corbin.*

The opinion of the court was delivered by

KALISCH, J. The sole ground of appeal from the judgment entered on the verdict in this case is that the trial judge at the Circuit directed a verdict in favor of the defendant, whereas the questions involved should have been left to the jury to decide. This necessitates an inquiry into the facts of the case in order to elicit whether there was any testimony tending to establish the liability of the defendant which called for decision by a jury.

The plaintiff brought her action for damages under the statute for the benefit of herself and next of kin, widow and children of the plaintiff's intestate, who was killed by a train of the respondent company, while on the platform of its station, at Little Ferry.

The testimony developed that the station was a union station, being in the joint occupation and use of the respondent company and the West Shore Railroad Company; that the easterly side of the station abutted the tracks of the West Shore railroad and the westerly side abutted the tracks of the respondent company; that the platform of this station adjoins the respondent company's tracks, and leads to the

highway and extends along the entire length of the station, and was provided by the respondent and West Shore Railroad Company for the use of passengers carried on either line; that this platform at its widest part is ten feet six inches, but that at the place where the decedent met his death, the platform is narrowed to a width of five feet, because of a freight station platform extending upon it.

The plaintiff's intestate was a commuter on the line of the West Shore Railroad Company, and on the evening of the accident had alighted from a West Shore train, on which he had traveled to Little Ferry, and walked through the station to the platform adjoining the respondent's tracks, and then started to walk towards the highway and while, according to the testimony of a witness, the decedent was walking along in the centre of the platform, between the freight station platform and the respondent's tracks, a train of the respondent company, estimated to have been going at a rate of speed of fifty-five or sixty miles an hour, without giving any warning or notice of approach, went by the station, and, quoting the testimony of this witness, "something drew him to the train. Just like a wind drew him to the train." The witness further testified that she felt the effect of the passing of the train at the time, in that it blew her clothes and drew her to the train, and that she held on to the freight platform to prevent herself from being pulled in by the train.

There is also testimony tending to establish that the decedent was about three feet away from the edge of the platform, at the time it is alleged that he was drawn to the train and thrown to the platform with fatal result, by the force of wind and suction produced by the passing train.

The facts and circumstances of this case are similar to those which were present in *Munroe* v. *Pennsylvania Railroad Co.*, 85 *N. J. L.* 688.

It was there held that the specific duty imposed by law, under the circumstances, was to give reasonable warning to persons lawfully on the platform of the approach of a belated train, traveling at a high rate of speed. It was further held that it cannot be said as a matter of law that it was a negli-

gent act of the deceased to walk within three feet of the platform.

These legal principles are applicable to the facts and circumstances of the present case, and the plaintiff was therefore entitled to have had the negligence charged against the respondent, and the negligence attributed to the deceased submitted to the jury for determination.

There is no real force in the contention of counsel of respondent that the theory of the appellant that the decedent was drawn to the train by suction was not raised by the pleadings. The pleader in the complaint has grouped together, in a rather unscientific way, a number of causes conducing to the decedent being struck by the train.

After stating that the train came through at a high rate of speed, without notice or warning to the passengers on the platform, and that the train was of such width as to strike any person standing near the edge of the platform, he proceeds to state that the train "did with great force and violence strike, draw to it and drag along the said Carl Schulz," &c. But it is quite apparent that if the words "draw to it" had preceded the word "strike," it would have been a clearer statement that the decedent was drawn to the train and struck by it.

We think, therefore, that there was enough in the complaint to have warranted the plaintiff to have based her claim for damages on the suction theory.

Besides all this, we cannot overlook the fact that without any objection by the respondent, the case was tried out on that theory.

The judgment will be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Vredenburgh, White, Terhune, Heppenheimer, Williams, JJ. 14.