ARTHUR L. TURNER v. MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, a Corporation, Appellant.—142 S. W. (2d) 455.

Division Two, May 4, 1940.

*Carl S. Hoffman* and *Montgomery, Martin & Montgomery* for appellant.

*Frank W. Hayes, Fred F. Wesner* and *Neibling & Levvis* for respondent.

ELLISON, P. J.—Respondent Turner was injured March 25, 1929, on the platform of the railroad station in Rosedale, Kansas, used by the appellant M., K. & T. Railroad Company. According to his evidence, he was struck by the open door of a refrigerator car in one of appellant's passing freight trains, while at the station to send a telegram to his sister. The evidence for appellant was that he was drunk and attempted to "hop" the train. At any rate he was severely injured and brought a common-law action for damages against appellant in the circuit court of Jackson County, Missouri, on March 6, 1930.

The jury returned a verdict in his favor for $75,000, but appellant's motion for new trial was confessed by respondent's counsel in March, 1932, and a new trial granted because of error in one of his instructions on the burden of proof, resulting from a change in our case law just after the trial. The cause stood on the docket until July 10, 1937, when, as the record shows, it was voluntarily dismissed by respondent without prejudice to his right to bring a new suit. This he did two days later. In this second (instant) suit nine of the

jury returned a verdict for $63,000 and respondent remitted $30,000. Judgment was accordingly entered for $33,000.

Appellant's first assignment (in logical order) is that respondent's action is barred by limitation. It's amended answer specifically pleaded as a bar Sec. 869, R. S. 1929, Mo. Stat. Ann., p. 1158, in connection with Sec. 60-306, G. S. Kan. 1935, and Ericson v. Charles, 108 Kan. 205, 194 Pac. 652. This Kansas statute is a pure Statute of Limitations applicable to civil actions other than for the recovery of real estate (in other words it does not *create* the causes of action but merely limits them) and provides among other things that the period of limitation shall be two years after the accrual of the cause of action, on actions ''for injury to the rights of another, not arising on contract, and not hereinafter enumerated. . . .'' The Kansas Supreme Court in the Ericson case held the statute applies to tort actions like the present one. On respondent's motion the trial court struck this defense from the answer, and the ruling is assigned as error.

The Missouri statute, Sec. 869, says that ''whenever a cause of action has been fully barred by the laws of the state . . . in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state.'' And since the Kansas statute, supra, fixes a limitation period of two years, and the instant suit was not filed until July, 1937, more than eight years after the action accrued, appellant says it must fail. But it is to be remembered that respondent had filed his first suit on the same cause of action within less than a year after the casualty, and entered a voluntary dismissal without prejudice to his right to bring a new suit after the trial court had granted appellant a new trial. The instant suit was brought within two days after that dismissal.

Relying on these facts, respondent calls our attention to another Kansas statute, Sec. 60-311, G. S. Kan. 1935, which allows the plaintiff a year to refile his action if he ''fail . . . otherwise than upon the merits;'' provided the action was timely brought in the first place and the period of limitation has expired. He also cites McWhirt v. McKee, 6 Kan. 412, 419, holding that a dismissal without prejudice is a failure ''otherwise than upon the merits'' within the meaning of that statute. But the statute is not open to our consideration because it was neither pleaded nor introduced in evidence at the trial below. [Sec. 806, R. S. Mo. 1929, Mo. Stat. Ann., p. 1057; Secs. 1649, 1653, R. S. Mo. 1929, Mo. Stat. Ann., pp. 3966, 3967; Rositzky v. Rositzky, 329 Mo. 662, 671, 46 S. W. (2d) 591, 595.] We are therefore in the same situation as if Sec. 60-306, cited by appellant, were the only Kansas statute on the subject.

Nevertheless, respondent asserts he is saved by another Missouri statute, which governs the case and tolls the two-year period of limitation imposed by our Sec. 869, and the Kansas statute last men-

tioned. It is Sec. 874, R. S. 1929, Mo. Stat. Ann., p. 1161, and provides that: "If any action shall have been commenced within the times respectively prescribed in articles 8 and 9 of this chapter, and the plaintiff therein suffer a nonsuit, or, after a verdict for him, the judgment be arrested, or, after a judgment for him, the same be reversed on appeal or error, such plaintiff may commence a new action from time to time, within one year after such nonsuit suffered or such judgment arrested or reversed . . ." This Section 874 seems to cover actions under Sec. 869, because it specifies any action commenced within the times prescribed in articles 8 and 9 of the chapter; and Sec. 869 does appear in said article 9.

Appellant argues otherwise because of another statute in the same article 9, Sec. 881, R. S. Mo. 1929, Mo. Stat. Ann., p. 1166, which says: "The provisions of articles 8 and 9 of this chapter shall not extend to any action which is or shall be otherwise limited by any statute; but such action shall be brought within the time limited by such statute." This Sec. 881 and Sec. 874, supra, have appeared in the same article since they were first enacted as Sections 3 and 10, R. S. 1845, pp. 718, 720. And by reason of the former it has been held for many years that the provisions of Sec. 874 do not apply to actions under statutes which carry their own special Statutes of Limitation. Appellant contends Sec. 869, supra, is a special Statute of Limitations; and that Sec. 874 can have no reference thereto because it was enacted more than fifty years before Sec. 869 was inserted in article 9 by Laws Mo. 1899, p. 300. Stated otherwise, appellant's theory is that Sec. 874 refers only to such causes of action and limitations as were covered by articles 8 and 9 when it became a part thereof in 1845.

We are unable to accept this view. The title of the bill when Sec. 869 was first enacted discloses a contrary legislative intent. It read: "An Act to amend chapter 103 of the Revised Statutes of Missouri of 1889, entitled 'Limitations of Actions,' by adding a new section thereto." (Chapter 103 then covered the same subject matter as Arts. 8 and 9 now.) The whole *chapter* was amended by the addition of the section, and the rule is that for the purposes of construction the amendment is to be considered a part of the original act as if it had always been contained therein. [59 C. J., sec. 647, p. 1096; 25 R. C. L., sec. 159, p. 907.] Further, the chapter dealt generally with limitations governing real and personal actions; and another rule of construction is that when a statute (like Sec. 874) refers not merely to a particular statute, but to the law generally governing a certain subject, the reference includes not only the law in force when the referring statute was enacted but also subsequent laws on that subject, so far as consistent with the statute. [25 R. C. L., sec. 160, p. 908, 59 C. J., sec. 624, p. 1061.]

The new Section 869 was not inconsistent with Sec. 874. The Legislature well may have desired to make the latter toll the former.

Sec. 869 was none the less a Missouri statute because it adopted periods of limitation fixed by foreign statutes. The law of the forum governs except where the foreign statute that imposes the limitation also creates the remedy. [Carter v. Burns, 332 Mo. 1128, 1144, 61 S. W. (2d) 933, 941(11).] As stated in the beginning, that is not the case here. This question was well decided in Christner v. C., R. I. & P. Ry. Co., 228 Mo. App. 220, 64 S. W. (2d) 752.

Finally, appellant contends Sec. 874 does not apply because at best it tolls the limitation of Sec. 869 only when and if a plaintiff *suffer* a nonsuit; whereas the respondent entered a *voluntary* nonsuit without any coercion by the trial court. Appellant's brief says there is no case involving Sec. 874 wherein this court has expressly held a voluntary dismissal is a nonsuit within the contemplation of that statute; but this statement is incorrect. It was so held in Shaw v. Pershing, 57 Mo. 416, 422, the first time the question ever arose in Missouri. The decision said: "It is urged here, that a non-suit, within the meaning of this statute, is such as is brought about by some adverse ruling of the court. But the language of the statute is plain and positive, and covers non-suits, no matter what may be the reason that induced them. The language is such as hardly to admit of any other than a literal construction. Besides, there is no good reason why a party should not act on his own motion in taking the non-suit." More broadly, this court declared in Wetmore v. Couch, 188 Mo. 647, 654, 87 S. W. 954, 955: "it has practically been held that the word 'nonsuit' in the section involved (now Sec. 874) means any judgment or discontinuance or dismissal whereby the merits are left untouched, thus discarding all technical niceties in the gloss of the word." For the reasons stated this assignment is overruled.

■ Appellant next contends the trial court erred in overruling its demurrer to the evidence, because: (1) the case is not one in which the doctrine of *res ipsa loquitur* should be applied; (2) and the proof failed to show any specific negligence on its part. Appellant concedes that less than two years ago this Division ruled contrary to the first contention in Evans v. Mo. Pac. Rd. Co., 342 Mo. 420, 116 S. W. (2d) 8; but we are asked to reconsider the question and over-rule that decision—which was rendered after the trial of the instant case. In the Evans case the plaintiff was standing in a public street three, four or five feet to one side of a passing freight train, facing the direction in which it was moving. A bar or rod projecting from one of the cars struck him about the knees and he was thrown under the train.

We are unable to see anything revolutionary in this decision. In Thompson v. St. L., S. W. Ry. Co., 243 Mo. 336, 353-4, 148 S. W. 484, 489-90, the doctrine was applied where a loose freight car door in a moving train struck a plaintiff at a railroad station. Also in Mayne

v. K. C. Rys. Co., 287 Mo. 235, 248, 229 S. W. 386, 389, where the front wheels of a street car struck a split switch, causing it to sideswipe an intended passenger in the street; and Noce v. St. L.-S. F. Ry. Co., 337 Mo. 689, 695, 85 S. W. (2d) 637, 639, where a piece of metal flew from the drive wheel of a speeding locomotive engine and struck a section man on the railroad right-of-way. Six outside decisions of like tenor are cited in the margin.[1] Appellant refers us to four others rejecting the *res ipsa* doctrine in similar circumstances.[2]

The one Missouri case cited by appellant should be noticed. It is Thompson v. St. L. S. W. Ry. Co., 183 S. W. 631, 635, a second appeal of the Thompson case cited in the preceding paragraph. We think it should be distinguished in part; and overruled in part. It does hold the plaintiff failed to make a case for the jury because he did not prove the railroad company had actual or constructive notice of the loose car door there involved. But that ruling can be accounted for by the fact that the plaintiff had *assumed at the trial* the burden of making such a showing (as stated in an earlier paragraph of the opinion). In other words, his trial theory was not founded on the *res ipsa loquitur* doctrine (although he obtained an instruction on it). That far the decision is distinguishable.

But the case further holds the defendant railroad's demurrer to the evidence should have been sustained because its witnesses testified positively and without contradiction that prior timely inspections of the car had disclosed nothing wrong with the door. That far the case should be overruled because it is in conflict with settled rules. We have never held, except in this Thompson case, that the presumption raised by the *res ipsa loquitur* doctrine takes flight on the presentation of rebutting evidence. To the contrary, we said for a long time the presumption was so strong that it shifted the burden of *proof* to the defendant; until that rule was overturned by McCloskey v. Koplar, 329 Mo. 527, 46 S. W. (2d) 557, 92 A. L. R. 641. Since then the law has been as declared in the Evans case, supra, 342 Mo. l. c. 424, 116 S. W. (2d) l. c. 9, and Kurz v. Bland, 333 Mo. 941, 947, 64 S. W. (2d) 638, 641. These cases say the presumption of negligence raised by the doctrine of *res ipsa loquitur* shifts the burden of evidence, not the burden of proof; and that it abides to the end, taking the plaintiff's case to the jury even though the defendant has presented strong rebutting evidence. In other words it amounts to an *inference* which the jury *must* weigh, and from which

---

[1]Delaware & H. Co. v. Dix, 188 Fed. 901; Smith v. Penn. Rd. Co., 239 Fed. 103, 15 N. C. C. A. 371, note; Tyndall v. N. Y. C. & H. R. Rd. Co., 141 N. Y. Supp. 879; Howard v. C. & A. Rd. Co., 179 Ill. App. 380, 384; L. & N. Rd. Co. v. Clark, 32 Ky. L. Rep. 736, 106 S. W. 1184, 1186; L. & N. Rd. Co. v. McMillen, 142 Ky. 257, 134 S. W. 185, 186.

[2]Case v. C., R. I. & P. Ry. Co., 64 Iowa, 762, 21 N. W. 30; C. & E. I. Rd. Co. v. Reilly, 212 Ill. 506, 74 N. E. 454; M., K. & T. Rd. Co. v. Sowards, 165 Okla. 214, 217, 25 Pac. (2d) 641; Preslar v. M. & O. Rd. Co., 135 Tenn. 42, 185 S. W. 67.

they *may* find the fact of negligence, 53 A. L. R. 1511, note. It is a presumption only in the sense that the *law* declares it substantial evidence of negligence, and thereby makes it binding on the judge but not on the jury.

Appellant attempts to distinguish the foregoing decisions by reason of the facts that the refrigerator car here involved did not belong to appellant, and the evidence does not show how long it had been in its possession and control. Appellant insists this takes the case out of the *res ipsa* rule because there may have been sufficient time to discover the defects in the car door and fastenings. The contention cannot be sustained for two reasons: first, as soon as the car came into appellant's possession and absolute control it was duty-bound to discover such defects as an inspection would disclose, before using the car in traffic, Tyndall v. N. Y. C. & H. Rd. Co., 141 N. Y. Supp. 879, 881; Sykes v. St. L., & S. F. Ry. Co., 86 Mo. App. 193, 206; and second, *appellant's* evidence shows the train was newly made up in its yards less than a mile from the scene of the accident and a thorough inspection completed less than 30 minutes before it pulled out. This was about ten minutes before the casualty.

After considering all the legal questions presented we are settled in the view expressed in the Evans case, supra, and hold the doctrine of *res ipsa loquitur* was properly invoked by respondent. All the facts necessary to its application were present. The respondent was an invitee and the appellant was legally bound to protect him from negligent injury. [Thompson v. St. L. S. W. Ry. Co., supra, 243 Mo. l. c. 351, 148 S. W. l. c. 489; Simons v. K. C. Jockey Club, 334 Mo. 99, 108, 66 S. W. (2d) 119, 123; Thompson v. Central Rd. of N. J., 104 N. J. Law, 411, 140 Atl. 330.] The casualty would not ordinarily have occurred, except for careless inspection or operation of the train; both inspection and user were in the exclusive control of the appellant; and the evidence showing why the car door was open was more practically accessible to the appellant. [See Tayer v. York Ice Machinery Co., 342 Mo. 912, 922, 119 S. W. (2d) 240, 244, 117 A. L. R. 1414.] This being true, it was unnecessary for respondent to prove specific negligence, and hence appellant's second point under this assignment also must fail.

The next assignment is that respondent was guilty of contributory negligence as a matter of law in going so close to the moving train as to be struck by the open car door (if he was) without keeping a lookout. He estimated he was walking 2½ or 3 feet (30 or 36 inches) from the side of the cars, which were traveling in the same direction 12 to 15 miles per hour. The door of a refrigerator car when swung wide open extends out 26 inches—not far enough to reach the respondent where he placed himself. Nevertheless he testified positively he was struck by the door. But there is an iron lever on the door which is used to open and fasten it closed. This

lever when projected horizontally reaches 18½ inches beyond the edge of the open door, making 44½ inches from the side of the car, which would have been far enough to strike respondent in his stated position. When not in use and functioning normally the lever drops to a perpendicular position, but a man named Lepper, formerly employed as a railroad switchman, testified as an expert witness for respondent that they sometimes will stick out when rusty or jammed. However, there was no direct evidence that the lever was projecting from the door that hit respondent. Presently we shall come to the question whether there was any substantial evidence at all of that fact.

In his brief appellant argues from this evidence that respondent was struck by the door not the lever, and says that since the blow was solid enough (not glancing) to knock him forward under the car, the door must have overlapped his body. On the theory appellant contends respondent was less than 26 inches from the car—probably only 14 or 16 inches from the iron ladders running up the side of each car. (The ladders were 4 inches thick.) The respondent in his brief insists there was substantial evidence that the door lever was projecting and struck him while he was 30 to 36 inches from the side of the car. In ruling on appellant's assignment that respondent was guilty of contributory negligence as a matter of law, we shall tentatively consider it from the viewpoints of both appellant and respondent.

Appellant refers us to three Kansas decisions holding the injured party was guilty of negligence as a matter of law when he stood on or so near the track as to be in range of the *normal* width of a train. We do not cite them because they are not in point. Another case, Kozloski v. R., S. & E. Rd. Co., 126 N. Y. Supp. 609, held the same way where a man stood on a platform within *20 inches* of a rapidly passing interurban car which he saw approaching. The suction drew him under the car. This case also is not in point. Still another case, Grennon v. N. O. Pub. Serv., 10 La. App. 641, 120 So. 801, applied the rule where a prospective passenger stood on a platform so close to a street car he knew was coming as to be struck by a door *ten inches* wide, which was opened just before the car passed him.

On the other hand it was held in Hicks v. The Pacific Rd. Co., 64 Mo. 430, 432, that the issue on contributory negligence was a jury question, where a boy on a depot platform was struck by a piece of timber projecting *20 to 24 inches* from the side of a passing freight car. The opinion does not show it, but the original record in the case on file here discloses that the defendant contended the boy was guilty of contributory negligence as a matter of law. In Southern Ry. Co. v. Cooper, 172 Ala. 505, 515, 55 So. 211, a boy walking *24 inches* from the track was struck by the bent out step on a passing locomotive approaching from his rear, and it was held the question of

contributory negligence was for the jury. In N. Y., C. & St. L. Rd. Co. v. Mushrush, 11 Ind. App. 192, 37 N. E. 954, a boy 12 years old was walking slowly along a station platform within *18 inches* of a train moving at two miles per hour. He stumbled and fell under the train. The decision ruled he was not guilty of contributory negligence as a matter of law. The same conclusion was reached in Schulz v. N. Y. S. & W. Rd. Co., 87 N. J. Law, 659, 94 Atl. 579, and Munroe v. Penna. Rd. Co., 85 N. J. Law, 688, 90 Atl. 254, where the injured parties were on a station platform *36 inches* from the edge thereof, and a train which normally overhung the edge of the platform passed at 55 to 60 miles per hour, drawing them under the cars by suction.

. In Metcalf v. St. L. & S. F. Rd. Co., 156 Ala. 240, 243, 47 So. 158, the deceased while standing on a station platform was struck and killed by a timber projecting (length not stated) from a rapidly passing freight train. Held on demurrer to the complaint: he was "not guilty of negligence" unless he knew the projection would extend over the platform, because he had a right to rely on the safety of the platform as against passing trains. Another case, L. & N. Rd. Co. v. Glascow, 179 Ala. 251, 257, 60 So. 103, in ruling on a demurrer to somewhat similar facts, holds a person standing at or near a station awaiting his train "is not guilty of contributory negligence by standing near the track, unless he gets so close thereto as to be struck by an *ordinary* train." (Italics ours.) This case refers to Denison & S. Ry. Co. v. Craig, 35 Tex. Civ. App. 548, 80 S. W. 865, where the same ruling was made on a demurrer to the evidence. The doctrine is similarly stated in 10 C. J., sec. 1492, p. 1109, but the cases cited in support of the text, hold only that the party is not guilty of contributory negligence *as a matter of law*. [Campbell v. Yazoo & Miss. Valley Rd. Co., 95 Miss. 309, 313, 48 So. 618, 21 Ann. Cas. 1179, note; Loder v. Met. St. Ry. Co., 82 N. Y. Supp. 957; Evansville Rd. Co. v. Miller, 64 Ind. App. 206, 111 N. E. 1031. See also Langan v. St. L., I. M. & S. Ry. Co., 72 Mo. 392.]

Our conclusion in the instant case, considering the foregoing decisions, the slow speed of the train, the fact that most of it had passed by, and that respondent was rightfully on the platform, is that he was not guilty of contributory negligence as a matter of law, but that the question was for the jury even though he was close enough to the train to be within range of the open car door projecting out 26 inches. This, of course, means his negligence was all the more a question of fact rather than law if the respondent was 2½ or 3 feet from the side of the car, as he says.

██ However, that does not settle the matter, in view of another closely related assignment made by appellant, namely that the trial court erred in admitting the expert testimony of the witness Lepper, already mentioned, that the levers on refrigerator car doors occasionally would stick out as a result of being rusty or jammed. Appellant

objected on the ground that the testimony was incompetent, immaterial, speculative, did not show the condition of the door, and was based on a hypothesis unsupported by any evidence. In short, the objection was mainly that the testimony was inadmissible because there was no substantial evidence showing the lever of the door hit respondent. The objection was overruled and the testimony admitted. We think this ruling was erroneous.

No witness testified the lever was projecting. Two of respondent's eyewitnesses further up the track saw the door of a refrigerator car open and swinging, but were not asked and did not say whether the lever was projecting. One saw the car but didn't see the door open. The respondent first testified he looked around and about four feet back saw "this refrigerator door standing out." A few lines later he stated: "the door or some attachment on the door" struck him in the side below his upraised left arm, knocking him to the ground under the car.

The car was painted yellow, the iron doors levers were black—a color contrast easy to see. Since the cause of their occasional projection was rust or jamming, necessarily they would extend rigidly and not swing up and down momentarily, thereby concealing the defect most of the time. Respondent contends here the lever was sticking out so far as to knock him under the car, when he was 30 to 36 inches away, and the train was moving only 12 to 15 miles per hour on a straight track. His statement that he was struck by the door *or some attachment* thereon is a pure conclusion or deduction based on his estimate of his distance from the car, and vague at that. If he could have testified that he saw the lever extended he doubtless would have done so, knowing that fact was essential to his theory of the cause of the casualty. His estimate of distance (which he said at one place was a matter of his best judgment) must yield to the *facts* as he and the two other witnesses saw them. [Eyerman v. Sheehan, 52 Mo. 221, 223; Pedigo v. Rosenberry, 340 Mo. 724, 734, 102 S. W. (2d) 600, 606(6).]

And incidentally he further testified he was walking in a path on the chat platform where other people walked. Two photographs of the platform taken on the afternoon of the casualty and introduced by appellant, the general accuracy of which respondent did not dispute, show the path along a line, or course, where the platform levels out after sloping up from the end of ties under the rails. The distance of this line from the rail was 36 to 48 inches according to appellant's witness Pollard. The overhang of the car beyond the rail was 26 inches and the width of the open door was the same, making 52 inches. In other words, respondent was within range of the door if Pollard's testimony was true. We do not assume its truth, but merely point out that these facts, part of which were vouched for by respondent, do not corroborate his estimate of his distance from the car.

Respondent refers us to textual statements of the doctrine that evidence may be received showing it was possible or impossible for an injury to have been caused in a certain manner: 22 C. J., sec. 856, p. 763; 45 C. J., sec. 817, p. 1252. That of course is true when there is any substantial evidence tending to prove the injury was inflicted in that manner; but it is not true when there is no basis for the hypothesis, and all the fact testimony is wholly negative or to the contrary on that point. He also cites Delaware & H. Co. v. Dix, supra, 188 Fed. 901, where evidence was received that a lever was projecting from the open door of a passing refrigerator car, though no eyewitness saw it. But in that case the undisputed testimony showed plaintiff's intestate was sitting by the window in a caboose on an adjoining track, too far away to be reached except by the lever, which crashed through the window and nearly severed his head. The eyewitnesses saw him in that position and the physical facts were such that the casualty could not have happened otherwise. The difference between that case and this is manifest.

Respondent further argues that since this is a *res ipsa loquitur* case he would have been entitled to go to the jury even in the absence of the evidence about the projecting lever on the door; and that he was therefore entitled to explain the occurrence as well as he could, by his indefinite reference to "some attachment" on the door. The trouble is that that statement was not evidence but a conclusion, and must be so treated here although it went in without objection. [Nodaway County v. Williams (Mo. Div. 1), 199 S. W. 224, 227 (5).] Therefore it furnished no basis for the admission over objection of Lepper's expert testimony that such levers sometimes would stick out. And while it is true that a plaintiff may prove more than was fundamentally necessary in a *res ipsa loquitur* case, if the cause of the casualty remain still in doubt, without forfeiting the benefit of the rule, nevertheless he is bound by what he does prove the same as in any other negligence case. [Conduit v. Trenton Gas & Elec. Co., 326 Mo. 133, 143, 31 S. W. (2d) 21, 25(5).] He cannot escape the consequences of error in the introduction of that evidence merely because he could have made a case without it.

Respondent's statement about the attachment on the door and the expert testimony of Lepper were submitted to the jury. As we have already ruled, the issue whether respondent was guilty of contributory negligence in being within range of the 26-inch door was a question of fact for the jury. They, or a number of them may have believed he was negligent if he was that close to the car; but have concluded he was further away and struck by the lever, thereby basing their verdict on the incompetent evidence. For these reasons we hold the error in the admission of Lepper's testimony was prejudicial and reversible.

■ Since the case may be retried, we pass on another assignment. A witness for respondent at the first trial in 1931 was a nonresident of Missouri and did not attend the second trial in 1938. Respondent had obtained an authenticated transcript of his former testimony. Thereafter appellant took his deposition, respondent's counsel being present and cross-examining. *Respondent* introduced the deposition in evidence. In giving it the witness was very forgetful about the details of the casualty nine yeare before, but several times stated his testimony on a given point at the first trial would be correct. Respondent then offered the transcript in evidence. Appellant objected on the ground, mainly, that the witness constructively was appearing and testifying by his deposition; but also added that it was an improper attempt to bolster up his testimony. This last part of the objection was not clear, we should explain in fairness to the trial judge. The court overruled the objection in part by permitting respondent to read sixteen questions and answers from the transcript to piece out the deposition. Most of these related to matters about which the witness was indefinite. A few concerned facts not covered by the deposition. Appellant assigns this ruling as error.

The direct admission of parts of the transcript to fill in gaps in the deposition due to the witness' faulty memory, was clearly erroneous. The applicable rule is thus stated in 20 Am. Jur., sec. 703, p. 590: "The mere fact that a witness who is not mentally incapacitated has forgotten the facts to which he formerly testified or that he fails to recollect particular facts will not admit proof of his testimony at a former trial." [See, also, 22 C. J., sec. 522, p. 436; 18 C. J., sec. 214, p. 691; 91 Am. St. Rep. 195, note; 3 Jones' Commentaries on Evidence (2 Ed.), pp. 2176, 2177; Stein v. Swensen, 46 Minn. 330, 49 N. W. 55, 24 Am. St. Rep. 234; Robinson v. Gilman, 43 N. H. 295; Rio Grande So. Rd. Co. v. Campbell, 55 Colo. 493, 136 Pac. 68, Ann. Cas. 1914C, 573, note.]

This rule would be controlling whether the witness were present in person or testifying by deposition. Indeed Sec. 1780, R. S. 1929, Mo. Stat. Ann., p. 4037, provides that depositions duly taken in a cause "may be read and used as evidence . . . as if the witness were present and examined in open court on the trial thereof." If respondent desired to refresh the witness' memory from the transcript when his deposition was taken, there was a way to do it, State v. Gregory, 339 Mo. 133, 148, 96 S. W. (2d) 47, 55. Indeed, since the *appellant* took the deposition the respondent could have interrogated the witness by aid of the transcript under the liberal rules applicable to cross-examination.

Whether it was error to admit parts of the transcript supplementing the deposition on matters not covered by it, is a closer question. Appellant contends the transcript was secondary evidence and wholly incompetent because the witness was *constructively* present and tes-

tifying by his deposition. And, as already pointed out, Sec. 1780, supra, does say a deposition may be used *as if* the witness were personally present, if he was in fact absent and a nonresident. But Sec. 1714, R. S. 1929, Mo. Stat. Ann., p. 3988, permits evidence preserved in a bill of exceptions to be "thereafter used . . . as if such testimony had been preserved in a deposition." It therefore follows that the testimony in the transcript also could be read and used in the same way. Under these statutes the facts of the case stand this way (stating some of them a little more fully than heretofore): (1) the respondent had first taken the "deposition" of the witness (meaning the transcript) seven years before the second trial, and notified appellant six months in advance of his intention to use it; (2) then appellant took the deposition of the same witness two months before that trial in preparation therefor, respondent's counsel being present and cross-examining; (3) the witness being absent, respondent adopted and first read at the trial the deposition taken by appellant, and then supplemented it on omitted matters by the earlier transcript.

In these circumstances we think the trial court ruled correctly in permitting the respondent to use the transcript on matters not covered by the deposition—that is to say, matters upon which the witness did not attempt to testify in the deposition. Respondent had adopted the deposition and was bound by it as far as it went. But our statutes do not forbid the same party to retake the deposition of the same witness, Robison v. C. G. W. Rd. Co. (Mo. App.), 66 S. W. (2d) 180, 190(13), though the use of such repetitious depositions is subject to the sound discretion of the trial court. [18 C. J., secs. 333, 335, pp. 728, 729.] And it will not do to say that when there are two depositions, the use of one of them first will put the witness constructively in court and thereby exclude the use of the other.

For the reasons stated, the judgment is reversed and the cause remanded. All concur.